**Billy Allen DeVOYLE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 43716.**

Court of Criminal Appeals of Texas.

Oct. 6, 1971.

**78**

This appeal is from a conviction for the offense of murder with malice. The jury assessed the punishment at life.

The record reflects that on the evening of April 26, 1969, Rayford Willis Cosper and James G. Levi were present at the Western Club in Harker Heights, near Killeen, in company with appellant and Anderson L. Ortega. The testimony of Ortega reveals that an argument ensued between appellant and Levi; that Levi paid appellant approximately $20.00 and that all four men left the club at approximately 1:00 A.M. for the purpose of playing poker at the appellant's house.

The record further reflects that the four men played poker and drank alcoholic beverages until approximately 2:30 A.M., when Ortega became tired and left for home; this was the last time Levi and Cosper were seen alive. Appellant was tried and convicted for the murder of Rayford Cosper.

On May 3, 1969, a Sergeant from Ft. Hood, while at Mayberry Park on the Ft. Hood Military Reservation, acquiring some soil for his wife's flower beds, discovered a decomposed body later identified as Rayford Cosper. The Sergeant immediately reported the incident to the authorities, and later investigation revealed a second body approximately 10 or 15 yards away, identified as James Garland Levi. Appellant was under surveillance that same day and was later invited to the police station. Appellant drove to the police station in his own automobile accompanied by a female companion. Approximately 10 or 15 minutes after arriving at the police station, appellant consented orally to a search of his automobile and house. Written consent forms were drawn up and signed, one for the house and one for his automobile. Appellant signed these forms approximately 40 minutes after arrival. The consent forms stated:

"I, <u>Bill DeVoyle,</u> having been informed of my constitutional right not to have a search made of the property hereinafter mentioned without a search warrant and

Piperi & Roberts, Holbrook & Harris, Killeen, for appellant.

Stanley Kicar, Dist. Atty., and Robert B. Wilson, John C. West, Jr., Asst. Dist. Attys., Belton, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

ON APPELLANT'S MOTION
FOR REHEARING

ODOM, Judge.

Our opinion on original submission is withdrawn and the following is substituted in lieu thereof.

of my right to refuse to consent to such a search, hereby authorize Trenton Horton, Texas Ranger, and Herbert Hill, Police Officers of the Killeen Police Department, Killeen, Texas, to conduct a complete search of my property located at (if auto, describe) 1962 Cadallic License Texas FXP 125. These officers are authorized by me to take from my property any letters, papers, materials or other property which they may desire.

"This written permission is being given by me to the above-named Police Officers voluntarily and without threats or promises of any kind. I do have control of the vehicle above described.

Bill DeVoyle

(SIGNED)

"WITNESSES:
Don Bush
Ray L. Anderson"

The other consent form is exactly the same except the description of the property to be searched is "1508 Redondo, Killeen, Texas."

The case was tried entirely on circumstantial evidence.

Appellant's first ground of error is that numerous state's exhibits were taken from the house and automobile pursuant to an illegal search, because he was not warned of his right to a court appointed attorney. The testimony reveals both oral and written consent given by appellant to the authorities to search his house and car.

Special Agent Edwin B. Jones, of the F.B.I., testified as follows:

"Q. When you advised him of his rights, would you go over again just exactly what you advised him of?

"A. Well, we have a form that we use and which I read off to him at that time, and which has the rights enumerated on it.

"Q. You do not remember specifically right now what you told him?

"A. First, that he had the right—well, let my try to get them in the right order.

"Q. All right.

"A. That he has the right not to be interviewed; that he has the right to counsel; that if he does not have a counsel, one can be appointed at any stage of the game; that he has the right to stop being interviewed at any time; that he can cease the interview or stop the interview, that is stop answering questions at any time; and that anything he does say can be used against him in a court of law. Basically that is it."

Donald Busby, City Attorney for the City of Killeen, testified:

"I asked Mr. Jones, he had come out of the room, and at that point I asked him whether or not he had given him the warning. He said, Yes, that he had, that he had given him all of the proper warnings."

He further testified, in regard to appellant's automobile and house, that:

"Q. And you did offer this instrument to Mr. Devoyle and ask him to read it?

"A. Yes, sir.

"Q. He told you that he had read it?

"A. That's right.

"Q. Did he indicate to you that he understood this particular transaction?

"A. Well, I think I asked him whether or not he understood that this was a

consent to search his automobile and he said he did.

"Q. And then I take it he went ahead and signed *in* in your presence?

"A. Yes, sir, in my presence and in Mr. Anderson's presence also."

■ We find the consent given by appellant to search the house and car to be an intelligent, knowledgeable waiver without coercion, and commensurate with the standards enumerated in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and Phelper v. Decker, 401 F.2d 232 (5th Cir.). Appellant's contention that the officers left an "impression" with him that they could get a search warrant if he did not sign, and therefore coerced him into signing, is not supported by the testimony in the record. The consent was valid. Bennett v. State, Tex.Cr.App., 450 S.W.2d 652; Garrett v. State, Tex.Cr.App., 400 S.W.2d 906; Maldonado v. State, Tex.Cr. App., 397 S.W.2d 862; Giacona v. State, Tex.Cr.App., 397 S.W.2d 863; Phelper v. State, Tex.Cr.App., 396 S.W.2d 396, Merwin v. State, 172 Tex.Cr.R. 244, 355 S.W.2d 721, cert. denied, 371 U.S. 913, 83 S.Ct. 259, 9 L.Ed.2d 172. Further, even though good police practice, we hold that it is not a requirement that the validity of consent to search is dependent upon giving of the "Miranda" warnings. Compare Barnett v. State, Tex.Cr.App., 447 S.W.2d 684, cert. denied, 396 U.S. 910, 90 S.Ct. 216, 24 L.Ed.2d 185. See also Gorman v. United States, 380 F.2d 158 (1st Cir., 1967); State v. McCarty, 199 Kan. 116, 427 P.2d 616 (1967).

Appellant's first ground of error is overruled.

■ Appellant, by his second ground of error, contends that the trial court erred by refusing to admit evidence pertaining to previous convictions and character of James Garland Levi.

True, Levi was in close proximity to the homicide. However, it is clear from the record that appellant did not show or attempt to show any type of motive on the part of Levi to kill Cosper. Bills of exception also fail to show that Levi had such a motive.

In addition, appellant did not attempt to show threats either against his life or Cosper's. See Article 1258 Vernon's Ann.P.C. The general rule is that:

"Evidence of previous difficulties between the victim and a third person or between third persons, is generally not admissible, unless it sheds some light on the offense." 29 Tex.Jur.2d 331, Sec. 198.

Also, appellant's bill of exception does not reveal any connection by Levi with the offense in question. See 4 Branch's Ann. P.C., Sec. 2239, and cases cited therein.

*The second ground of error is overruled.*

■ The third ground of error complains of the trial court's refusal to allow cross-examination of witnesses in regard to a written exculpatory statement of appellant which was made while in custody. Appellant did not testify, and the state did not attempt to introduce such statement into evidence. However, appellant contends the statement was alluded to during cross-examination by the following testimony:

"Q. (By State's Attorney) Chief Cannon, were you on duty off and on during the period beginning April 27, 1969, and through May 2nd, 1969?

"A. Yes, I was.

"Q. Were you at the Police Station— state whether or not you were at the Police Station daily.

"A. Yes, sir, I was.

"Q. To your own knowledge will you state whether or not the defendant here, Billy Allen Devoyle, ever mentioned to you the subject of the missing man?

"A. Not to me personally, no.

"Q. Would you state whether or not he mentioned it to anybody else?

"MR. HOLBROOK: (Appellant's Attorney) We object to that, Your Honor, as calling for hearsay.

"THE COURT: Objection sustained.

"MR. KACIR: (State's Attorney) He did not get the complete question out, Your Honor.

"MR. HOLLE: I was going to ask him of his own knowledge, Your Honor.

"A. Yes, sir."

Such statement referred to is dated May 4, 1969, and was admitted into evidence " * * * for the purpose of the record only and it is not for consideration by the jury." It was given to Texas Ranger Horton and contained appellant's version of the incident from the time the four men left the Western Club to go to his house to play poker; that after Ortega left his house, he (appellant) dropped off to sleep and was awakened by gunshots; that Cosper was "slumped on * * *" the table and blood was everywhere; that he and Levi got into an argument about what to do with Rayford and Levi "picked up the pistol and fired at me almost point blank and missed"; that they struggled and "the pistol got turned on James (Levi) and fired"; that he "drove to Mayberry Park and dragged the two into the bushes."

Chief Cannon testified, out of the presence of the jury, that he was not present and therefore had no personal knowledge of the statement dated May 4, 1969. Appellant stated that his purpose for cross-examining Cannon was to introduce the statement itself. Since Cannon had no personal knowledge of the statement, the court did not err in refusing to permit cross-examination *for this purpose*. See 24

Tex.Jur.2d, Evidence, Sec. 566, and cases cited under Note 4. We perceive no error.

Finding no reversible error, appellant's motion for rehearing is overruled and the judgment is affirmed.