Gerald Ross WEATHERLY, Appellant,

v.

The STATE of Texas, Appellee.

No. 44504.

Court of Criminal Appeals of Texas.

Feb. 2, 1972.

Rehearing Denied March 29, 1972.

John M. Anderson, Fort Worth, (on appeal only), for appellant.

Frank Coffey, Dist. Atty., John Garrett Hill, Asst. Dist. Atty., Fort Worth, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

The conviction is for robbery by firearms; the punishment, twenty years imprisonment.

The appellant complains the weapons used in the commission of the offense were improperly admitted into evidence because they were unlawfully obtained. He also complains of the failure of the trial court to instruct the jury concerning whether the written statement introduced into evidence was voluntarily made.

The body of David Daniels, an employee at a Shell Service Station, was found in the storage room on the floor; the clothing on the body was saturated with blood. The cash box had been broken into and approximately $127.00 was missing.

The appellant's written statement which was introduced into evidence, describes his participation in the commission of the

crime. A portion of the confession is as follows:

"My name is Gerald Ross Weatherly . . . . On Thursday night, November 6, 1969, me, Mike Bush and Charles E. Wooten . . . . left Charles' apartment and went to my apartment house in Euless to continue the party . . . . we drank some beer and whiskey . . . Charles had been talking about, all evening, pulling a robbery. When we left my apartment in my red 1966 Chevrolet Chevelle, we were looking for a place to rob. Charles said, while we looking for a place to rob, that he was going to kill whoever he robbed, so that there would be no witnesses left to testify. We drove to an Enco Station . . . in Hurst. I parked the car across the highway from the station and Charles Wooten and I walked over to the station to get a closer look. I bought a coke at the station. I knew the attendant at that station and I believe his name was Charles and we stood around and talked with him for a few minutes and then left. This was taking place between 1:00 and 2:00 A.M. of that morning. There was another attendant there with this man that I knew as Charles who was also an attendant with this station. Charles Wooten said there was too many people there to try and pull it off. We went back to the car and got in and drove to Precinct Line and Highway 183 where there was a Shell Station. We saw that the attendant was there alone and I then drove to the first street that runs behind the Shell Station and parked . . . . in front of . . . church . . . located on the corner of Precinct and Thomas Roads. Mike Bush and Charles Wooten got out of the car and I was to wait there for them. I knew that they were going to rob the Shell Station and I did not want to go with them but I told them I would wait for them while they pulled the robbery. Mike and Charles had gotten an old .22 pistol and a switch blade knife from me that were mine and took them with them. I had the pistol in the glove compartment on the dash and the switch blade knife was in the console between the seats. Charles got the gun out of the glove compartment and Mike got the knife out of the console compartment. They both then took off their socks and Charles said that they were going to put them over their hands so that they would not leave any finger prints. I waited in the car for them and in a little while they came back and I had fallen asleep in the car. They woke me up and Charles said, 'Let's go.' Charles was laughing and giggling all the time and Mike was real quiet and seemed pretty nervous. I asked Charles what had happened and he said, 'We robbed the attendant and we did him in good.' I then asked Charles what he meant by 'We did him in good' and he said, while he was still laughing and giggling, 'We stabbed him a whole bunch of times and beat him in the head with something and I don't know what I beat him in the head with.' Charles did say that he and Mike both had thrown full oil cans at the man's head and Charles said he picked up something and hit him in the head with it. Charles then pulled out a roll of money from his shirt pocket and he gave some of the money to Mike and he gave me $10.00. . . . I then drove Mike to his home and about a block from his house, Mike pulled off his shirt and he took the shirt and his socks and put them in a trash can at the curb. He then got out in front of his house and went inside. I then drove Charles home . . . . ."

The appellant, while testifying in his own behalf, admitted his participation in the crime substantially as it was stated in the written statement, which had been introduced.

The appellant's first ground of error as he states it is "The trial court erred in admitting into evidence, without a proper predicate having been laid and over the

objection of the appellant, State's Exhibit No. 6, a .22 caliber pistol, and State's Exhibit No. 7, a switch blade knife, which were instruments allegedly used in the commission of the robbery and allegedly discovered as a result of an oral conversation while appellant was under arrest."

This ground of error does not raise the question of the admissibility of an oral confession. It complains of the admission into evidence of the pistol and the switchblade knife. It is the State's theory that the weapons were lawfully obtained by a search after the voluntary consent of the appellant was obtained.

■ An appellant cannot complain of searches made with his consent. Stevenson v. State, 456 S.W.2d 60 (Tex.Cr.App. 1970); Maldonado v. State, 397 S.W.2d 862 (Tex.Cr.App.1966); DeVoyle v. State, 471 S.W.2d 77 (Tex.Cr.App.1971).

■ Under the totality of the circumstances, it appears that the appellant did give a valid consent to the search that resulted in the finding of the knife and the gun. The appellant was arrested at 2:00 p.m. by officers having a warrant for his arrest. He was immediately advised by the arresting officer of his constitutional rights in full compliance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966); Article 38.22, Vernon's Ann.C.C.P. At 2:25 p.m. the appellant was taken before a magistrate and was advised in accord with the requirements of Article 15.17, V.A.C.C.P. Appellant "indicated verbally" he did understand the meaning of the "warning" of the magistrate. Appellant also read the "warning" in the officer's presence. Almost immediately thereafter, the appellant signed a written form consenting to the search of his room. The written consent form is not before us. It was offered by the State and appellant's objection to its admission was sustained. The appellant took the officers to his home where he lived with his parents and they

were admitted by the appellant's father. The father was advised of the charges against his son. The appellant took the officers directly to his bedroom where, in the top dresser drawer, they found and recovered the pistol and switchblade knife used in committing the offense. The weapons were recovered within one hour after the appellant had been arrested.

■ It was not error to admit the weapons into evidence, DeVoyle v. State, *supra*; Bennett v. State, 450 S.W.2d 652 (Tex.Cr. App.1969). The fact that appellant was under arrest at the time he consented to the search did not render the fruits of the search inadmissible. Bennett v. State, *supra;* Weeks v. State, 417 S.W.2d 716 (Tex. Cr.App.1967).

The appellant's second ground of error is "The trial court erred in failing to include in his charge to the jury an instruction that unless the jury believes beyond a reasonable doubt that appellant's written confession, State's Exhibit No. 8, was voluntarily made, the jury shall not consider such confession for any purpose nor any evidence obtained as a result thereof."

The appellant objected to the court's charge for failing to submit the issue of voluntariness of the confession for the same reason he now urges in this ground of error.

The appellant argues he was entitled to the requested charge because he signed the statement which he made to the officers, a portion of which has already been quoted, in order to get out of jail. Appellant testified that his lawyer told him that if he did not make the statement he could not get out of jail. It is urged that the statements made by his attorney operated on the mind of the appellant, thereby inducing him to make the statement so that he could get out of jail.

The appellant was arrested December 29, 1969. He consulted with an attorney, re-

tained by his parents, on the same day. On January 12, 1970, after being advised of his statutory rights (Article 38.22, V.A. C.C.P.), he made a written statement to an assistant district attorney. The attorney, retained for the appellant by his parents, was present throughout the entire time the statement was made and reduced to writing. The attorney signed the statement as a witness. The trial court, after a hearing outside the presence of the jury, found the statement to be voluntary beyond a reasonable doubt before it was admitted into evidence before the jury.

The appellant's own testimony and other evidence in the record make it clear that no one other than the attorney retained for him by his parents represented to the appellant that he would not be released on bond until he made a confession. If appellant's attorney did make the representation claimed by the appellant, he had no authority to do so and the appellant cannot now rely upon such a representation made by his own attorney. See Benavides v. State, 475 S.W.2d 243 (Tex.Cr. App.1971).

The issue of the voluntariness of the statement was not raised and the refusal to give the requested charge was not error.

The appellant relies upon Fisher v. State, 379 S.W.2d 900 (Tex.Cr.App.1964) and other authorities recognizing the rule that a confession is inadmissible if induced by a positive promise of some benefit by "a person in authority." The appellant's own counsel is not "a person in authority" as contemplated by that rule. See 2 Wharton's Criminal Evidence, 126 (12th ed. 1955).

The judgment is affirmed.

Opinion approved by the Court.

MORRISON, J., not participating.