556 P.2d 784
**STATE of Arizona, Appellee,**
v.
**Rhonda HOCKER, Appellant.**
No. 3374–PR.

Supreme Court of Arizona,
In Banc.
Oct. 28, 1976.

Bruce E. Babbitt, Atty. Gen., William J. Schafer, III, Chief Counsel, Crim. Div. R. Wayne Ford, Asst. Atty. Gen., Phoenix, for appellee.

R. Kelly Hocker, Glynn W. Gilcrease, Jr., Tempe, for appellant.

GORDON, Justice.

Appellant, Rhonda Hocker, was convicted of possession of marijuana in violation of A.R.S. § 36–1002.05, a misdemeanor. She was placed on six months probation and fined $250.00. The Court of Appeals, Division One, 25 Ariz.App. 93, 541 P.2d 419 (1975), affirmed. This Court granted review. The opinion of the Court of Appeals is vacated. The judgment of the trial court is reversed.

The facts necessary to this review are as follows: On March 8, 1974, Chief Walter Maule and Sergeant Robert Tubbs of the Winslow Police Department (along with

other law enforcement officers) were patrolling the area around Winslow in an unmarked car following vague citizen complaints of marijuana parties. Similar patrols had taken place for the last three weekends, all without success. These actions were not prompted by any specific report of crime or by information from an informer. The officers testified that although they had not found a party, they had been stopping cars for investigation in the general area of the alleged party.

Around midnight, Maule and Tubbs were driving down the highway toward Winslow when they saw a car about 100–200 yards off the highway on a narrow, single lane, dirt road. They backed up and turned down the road to meet the car which was coming toward them. As the two vehicles approached, the driver of the other car, Donald Dowd, drove almost entirely off the road and stopped with one wheel in a small drainage ditch. Maule and Tubbs continued to approach until they reached a point where the left front fender of their car was opposite the left front fender of Dowd's car. At this point, they noticed the cab of the car was filled with smoke.

Maule and Tubbs stopped their car, got out, and walked toward the driver's side of the Dowd car. They had not yet revealed their official status. As they approached, Dowd rolled the window down and both officers recognized the smell of marijuana smoke. Dowd opened the door and stepped from the car to speak with Tubbs. Maule walked around the car to the passenger side where the appellant in this case, Rhonda Hocker, was seated. As he opened the door, she was sliding across the seat toward the driver's side. Maule grabbed her wrist and appellant pushed a bag down inside her jeans. Maule then led appellant out of the car and asked her what she had put down her pants. Receiving no answer, he handcuffed her behind her back. A few moments later appellant said, "Oh, hell, it's marijuana; get it." Maule said he would take her to town and the matron would retrieve it. Then appellant reached

down and pulled the bag out of her pants and handed it to Maule.

At that point the appellant was advised she was under arrest for possession of marijuana and placed in the front seat of Maule's car. Tubbs advised her of her Miranda rights and then she and Dowd were taken to the Winslow Police Department and booked.

A Navajo County Grand Jury returned an indictment on March 11, 1974 charging appellant with the crime of possession of marijuana. Appellant was tried before a jury, convicted of possession of marijuana, a misdemeanor, and sentenced.

Appellant raises five assignments of error: first, the indictment was invalid because (1) the trial judge erroneously instructed the Grand Jury that nine negative votes were needed for a "No Bill," (2) he gave an instruction implying that there was more evidence thus encouraging the return of an indictment, and (3) the prosecuting attorney improperly commented on the evidence; second, the evidence should have been suppressed because (1) the burden of proof was improperly allocated at the motion to suppress hearing, (2) the detention, arrest and seizure were illegal and (3) Miranda warnings were not given to appellant prior to the custodial interrogation which led directly to the officers obtaining evidence; third, the failure of the duly appointed court reporter to timely provide a transcript of the initial motion to suppress prejudiced appellant's right to a fair trial; fourth, the court should have presumed prejudice where defense counsel's notes, documents and transcripts remained on the table at which the jury deliberated although the bailiff had informed the court that the items had been removed; and fifth, the cumulative effect of these errors deprived defendant of a fair trial, warranting reversal.

### The Grand Jury Indictment

Appellant argues that the trial court should have granted her motion to quash the grand jury indictment. The

first ground urged by appellant is the incorrect instruction concerning the requirements for a "No Bill." The trial court said:

> "Now when you get the evidence completed, some of you might think there is probable cause and others think there isn't probable cause. But when you vote there has got to be at least nine to come up with a True Bill and *I understand also at least nine to come up with a No Bill,* and if you don't have at least nine, one way or the other, you haven't arrived at a decision with regard to the indictment. If you decide you are deadlocked and can't break that deadlock with discussion among yourselves—*in other words, break it to the extent of having nine either vote affirmative for True Bill or nine vote negative for No Bill*—then you would be deadlocked, in which event the County Attorney's Office should be notified."

> \*     \*     \*     \*     \*     \*

> "So long as you have less than nine one way or the other, then you probably should ask for more evidence, ask it be put off, after you state you are hopelessly deadlocked, and I would probably be called in in that event." (Emphasis added.)

This instruction is, of course, clearly erroneous since there is in Arizona no provision for return of a "No Bill" of indictment by a grand jury. The statute requires only that nine jurors concur in order to return a true bill of indictment. See A.R.S. § 21–414 and Rule 12.7, Rules of Criminal Procedure, 17 A.R.S.

The State concedes this error but argues that it was harmless. We agree. The record shows that the vote to indict was unanimous. The absence of even a single negative vote persuades us that the error in this case is harmless.

■ The second ground urged by appellant is the court's instruction to the grand jury that if they could not agree they "probably should ask for more evidence."

Appellant argues that this statement constitutes an indirect comment on the evidence because it assumes there is more evidence. While the remark was improper, we fail to see how any prejudice resulted. The jury did not ask for more evidence and the reasonable inference is that they concluded that the evidence before them was sufficient.

■ The third ground urged by appellant involves remarks by the county attorney in his presentation of the case to the grand jury. As the Court of Appeals has stated, exhortations and factual interpretations by the prosecutor are improper. *State v. Good,* 10 Ariz.App. 556, 460 P.2d 662 (1969). The prosecutor must not attempt to influence the grand jury or invade its province. The prosecutor who appears before a grand jury has a particularly weighty duty not to influence the jury because the defendant has no representative to watch out for his interests. Cf. *State v. Superior Court In and For County of Pima,* 102 Ariz. 388, 430 P.2d 408 (1967).

■ The prosecutor began his closing remarks with "I think the evidence is clear." Also, in explaining why appellant was charged as a principal as opposed to an accessory, the prosecutor made a conclusory statement as to the evidence. While we find these remarks injudicious, they do not rise to the level of impropriety which would require us to reverse the trial court's denial of the motion to quash the indictment and to order new grand jury proceedings. We find no attempt to influence the deliberations of the grand jury or usurp its functions. Cf. *State v. Good,* supra.

■■ Appellant argues that any sort of error in the grand jury proceedings invalidates the indictment even without a showing of prejudice to the defendant. We disagree. Denial of a motion to quash the indictment is within the sound discretion of the trial court. *State v. Good,* supra. Absent a showing of prejudice, the errors al-

leged in this grand jury proceeding do not constitute reversible error. Since we find no prejudice here, the trial court's denial of the motion to quash was proper.

### The Motion to Suppress

Appellant argues that the trial court should have granted her motion to suppress evidence. The first ground urged by appellant is that the trial court improperly shifted the burden of proof to appellant during the hearing on the motion. The governing rule is Rule 16.2(b) of the Rules of Criminal Procedure, A.R.S. 17:

"b. *Burden of Proof on Pretrial Motions to Suppress Evidence.* The prosecutor shall have the burden of proving, by a preponderance of the evidence, the lawfulness in all respects of the acquisition of all evidence which he will use at trial. However, whenever the defense is entitled under Rule 15 to discover the circumstances surrounding the taking of any evidence by confession, or search and seizure, or defense counsel was present at the taking, or the evidence was obtained pursuant to a valid search warrant, the prosecutor's burden of proof shall arise only after the defendant has come forward with evidence of specific circumstances which establish a prima facie case that the evidence taken should be suppressed."

The record gives no clear indication as to how the trial court allocated the burden of proof. The trial court never came to a decision on the facts; the court stated:

"The problem is, the Court does not, is not a fact finder as far as finding what the facts are when there are controverting facts involved as far as a motion to suppress. The test, as I understand it, is there evidence to support the motion, is there evidence to show that they clearly acted wrongfully and of course in this case, the officers' version of it is that they did not stop the vehicle and, so far as what the test is, as far as what the Court does at this point is that as long as there's evidence that in this case it would be their testimony, they did not stop the vehicle, then I don't think I can rule as a matter of law that it was illegal."

The trial judge here apparently felt that if there was conflicting evidence as to whether the officers stopped or detained the vehicle in which appellant was riding he could not decide this issue. This is not what is required by Rule 16.2(b), supra. Motions to suppress, like all evidentiary objections, require the Judge to exercise a function that is peculiarly his: to rule on matters of law. Whether, as a matter of law the evidence here was lawfully acquired was a preliminary ruling that the judge is required to make before proceeding with the case. If, after weighing the evidence given outside the presence of the jury, although conflicting, he is satisfied that the prosecutor has sustained his burden by a preponderance of the evidence,[1] the judge should make this finding for the record and order the evidence admitted before the jury. If he is not so satisfied by the evidence, he should make this finding for the record and order the evidence excluded. Until one or the other of these findings is made, the judge's function is not concluded. Here the judge did not complete his function. He allowed a matter of law to be decided by the jury.

For the foregoing reasons we find that the trial court's denial of the motion to suppress was improper. Since we are ruling, infra, that the evidence was inadmissible we cannot find that the improper denial was harmless beyond a reasonable doubt.

The second ground urged by appellant is that the investigative detention and

---

1. We are aware that under certain circumstances the prosecutor's burden arises only after the defendant has established a prima facie case for suppression. Defendant may fulfill this burden of going forward by bringing to the court's attention—through argument, legal theory or testimony—the defects in the state's argument. Contrary to the state's argument in its memorandum, the burden of proof never shifts to the defendant.

subsequent arrest and seizure of evidence were illegal, thereby mandating suppression of the evidence. We agree. We find that the original investigatory detention, the stop of the vehicle, was unreasonable.

A preliminary issue which is a recurring theme in this case is whether the police action constituted a "Terry" investigative stop, thus bringing it within the fourth amendment. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). There was some confusion during the trial as to this issue: the physical facts are fairly clear but the police insisted they did not make an investigative stop. The record is unclear whether the trial court held the action to be a reasonable detention or not to be a detention and therefore not within the protections of the fourth amendment. After discussing the "stop" issue, the court said, "I don't feel that the Court [can] rule as a matter of law that this was wrongful \* \* \*." The state does not seriously argue that the action was not a "Terry" investigative stop.

■ We find the evidence shows that the police made an investigative stop on the appellant and the vehicle in which she was riding. The evidence is uncontroverted that the police backed up and turned down a one lane road, inevitably leading to a head-on meeting with Dowd's car. The evidence also shows that the police car did not stop first but, rather, Dowd's vehicle pulled almost off the road partly onto an embankment. Testimony also shows that while it might be possible for one car to very slowly and carefully pass another car on that road, the safest and wisest course is for one of the two oncoming cars to yield to the other by pulling off the road. It was deliberate police action which caused Dowd's vehicle to come to a stop; choosing to avoid a head-on collision is not a voluntary stop. A brief quotation from Chief Maule's testimony will illustrate the state of mind of the police officers when they stopped the car:

"BY MR. GILCREASE:

"Q. Very briefly, you stated as you were coming down the road you were in the center and you didn't pull over to allow him any room to pass because you were going to pull up to the vehicle?

"A. Yes, we probably—

"Q. Because that was the reason that brought you down on the road; is that correct?

"A. I was going to see what them people were doing there, yes.

"Q. So then it was your purpose to stop the vehicle, to have it remain placed to see what it was doing?

"A. That probably would be fair to say that.

"MR. GILCREASE: No further questions.

"THE WITNESS: But it's not a stop.

"MR. FORD: No further questions."

■ It is well settled that "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617 (1972). Although the state need not demonstrate that probable cause to arrest a suspect existed at the inception of the detention, *State v. Gunter*, 100 Ariz. 356, 414 P.2d 734 (1966), such a detention is within the protections of the Fourth Amendment of the Federal Constitution. *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); *State v. Gastelo*, 111 Ariz. 459, 532 P.2d 521 (1975). We look to the totality of circumstances surrounding the incident to determine whether police conduct was reasonable. *State v. Gastelo*, supra. This Court recently elucidated its position on the reasonableness standard and adopted the California test. *State v. Fortier*, Ariz., 553 P.2d 1206 (Filed Aug. 6, 1976), citing

*Irwin v. Superior Court of Los Angeles County*, 1 Cal.3d 423, 82 Cal.Rptr. 484, 462 P.2d 12 (1969). While it is true that a temporary investigative detention is allowed under certain circumstances, these circumstances must be "such as to distinguish the activity of the detained person from that of any other citizen" and must be based on an "objective perception of events rather than the subjective feelings of the detaining officer." In order to justify the intrusion, the state must be able to point to specific and articulable facts, which may be combined with rational inferences from those facts. Thus, even in the absence of bad faith, detention based on a "mere hunch" is illegal. There must be a reasonable suspicion by the law enforcement officer that "some activity out of the ordinary" is or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to crime. *State v. Fortier*, Ariz., 553 P.2d at 1208.

◼ We hold that the circumstances of the detention here do not satisfy the above test. Driving in complete compliance with traffic laws on an infrequently[2] traveled road is not unusual enough to distinguish that activity from that of any other citizen. A complaint from an unnamed citizen that there might be a marijuana party in the general area is not sufficient to connect any person who happens to be there with that alleged crime. The officers testified that there was absolutely no suggestion of illegality when thay first decided to turn down the road, and they also testified that they had found no marijuana party that evening. There was no testimony that the road was ever used for criminal activity. Indeed, this detention was just the sort of fishing expedition the Fourth Amendment was designed to prohibit.

◼ Since we find the initial detention of appellant unreasonable and hence, un-

lawful, we must decide whether that illegality had become sufficiently attenuated so as to render admissible the evidence obtained thereby. The test for such attenuation is from *Wong Sun*: whether the evidence was procured by "exploitation of that illegality," rather than by means "sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963).

◼ In the instant circumstances, the illegal stop was exploited to obtain probable cause for arrest; there were no intervening circumstances between the stop and the arrest. The state concedes in its memorandum that appellant was in custody when she made the statement and when the marijuana was obtained. When she did not immediately reply to Chief Maule's question about what she had put in her pants, she was handcuffed and taken toward the officer's car. She was not given her Miranda warnings. That she handed the bag to the Chief after he told her he would take her to town and have the matron retrieve it does not indicate consent or any such voluntary act as would purge the taint, since she knew the police would obtain the evidence a few minutes later anyway. The same reasoning applies to her statement that "it's marijuana": handcuffed and on her way to the officers' vehicle, appellant knew the police were going to find the marijuana shortly no matter what she did; there was no attenuation.

◼ Under these circumstances, the evidence was procured by exploitation of the original illegality and it should have been suppressed. Since this conviction was for possession of marijuana, we cannot hold that wrongful denial of the motion to suppress the marijuana and oral evidence was harmless error.

Because we hold that the motion to suppress should have been granted on Fourth

---

2. In fact, Chief Maule testified that the road is fairly well frequented by reservation people.

**458**

Amendment grounds, we need not reach appellant's argument on Miranda warnings.

### Other Issues Raised

In view of our holdings above we need not reach the remaining points of error raised by appellant.

The trial court erred in denying the motion to suppress. The opinion of the Court of Appeals is vacated. The judgment of guilt is reversed and the case is remanded for proceedings not inconsistent with this opinion.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and HOLOHAN, JJ., concurring.