Lennie Keith ARMSTRONG, Appellant,

v.

The STATE of Texas, Appellee.

No. 51763.

Court of Criminal Appeals of Texas.

July 14, 1976.

State's Motion for Rehearing May 3, 1977.

**26**

Robert C. Roe, Jr., Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Marvin Collins, Jerry C. Buckner and Paul E. Gartner, Asst. Dist. Attys., Fort Worth, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

BROWN, Commissioner.

This is an appeal from a conviction for the offense of burglary of a habitation under V.T.C.A. Penal Code, Sec. 30.02. The trial was before a jury which found appellant guilty; punishment was assessed by the court at fifteen (15) years in the Texas Department of Corrections, the punishment being enhanced under the provisions of V.T.C.A. Penal Code, Sec. 12.42(c). Appellant was represented by appointed counsel at trial and by different appointed counsel on appeal.

The record shows that at 2:20 p. m., January 5, 1975, Officer L. T. Murphy of the Fort Worth Police Department stopped a "black over blue" 1966 Plymouth on the east side of Fort Worth. The officer stated that he stopped the car because he "had received information about ten days before of such a vehicle being wanted for the investigation of a burglary."

Appellant was driving the car and with him were Willie Arthur Sneed and Alice Miller. The officer arrested Sneed on outstanding warrants and then requested permission to search the vehicle. Appellant consented, and opened the trunk of the car. In the trunk were a portable color television, an electronic calculator, two tape players and a trumpet and case, and a small blue suitcase containing transistor equipment. Appellant and Mrs. Miller were arrested for investigation of burglary and transported to the Fort Worth city jail along with the Plymouth and the contents of the trunk.

At 7:00 p. m. on January 5, 1975, Prince Charles Ray returned to his home at 3901 Hardeman on the east side of Fort Worth and discovered that the kitchen door of the home had been broken open. Broken glass from the window pane in the door was

scattered on the kitchen floor. Ray searched the home and determined that a portable color television, an electronic calculator, two tape players, and a trumpet and case were missing.

Appellant's Motion to Suppress was overruled and the items were introduced into evidence over appellant's objections. Ray identified the items in court as the same items stolen from his home on January 5. Officer Murphy identified the items as the same items found in the trunk of appellant's car.

We have reviewed the three grounds of error asserted by appellant's appointed counsel as well as the numerous grounds of error raised in the series of pro se briefs filed in this Court between November 5, 1975 and May 14, 1976 and find them to be without merit. In light of our disposition of this appeal, no further discussion of those grounds of error is necessary.

 Although not raised as a ground of error in appellant's brief, we have determined that the admission into evidence of the items seized from the trunk of appellant's car was error. Appellant timely filed a Motion to Suppress the evidence seized during the search of the car on the grounds that the search and seizure were illegal. After a hearing, the trial court overruled appellant's Motion to Suppress. The items were introduced into evidence at the trial over appellant's timely objections that they were the results of an illegal search and seizure. Though not assigned as error either in appellant's motion for new trial or in appellant's brief, we have reviewed the record in the interest of justice pursuant to Art. 40.09, Section 13, V.A.C.C.P.

The record at the hearing on appellant's Motion to Suppress contains the following testimony of Officer L. T. Murphy concerning his apprehension of appellant, Sneed and Mrs. Miller:

"Q When you saw the Defendant, Lennie Keith Armstrong, what was he doing?

"A He was driving a vehicle northbound on Dillard Street.

"Q Do you recall the description of the vehicle?

"A It was a black over blue.

"Q All right. What kind of—

"A '66 Plymouth.

"Q What did you do when you saw Mr. Armstrong driving this vehicle?

"A I proceeded to stop him with my emergency lights.

"Q Okay. And what did he do when you turned on the lights?

"A He had pulled over to the curb and exited from the vehicle.

"Q Would you tell the Judge why you stopped him?

"A I had received information from the Records Bureau and other officers that a certain vehicle and suspects were wanted on several burglaries. I went to the Records Office at this time and looked up the record of the suspect and did see a 'wanted' on this suspect.

"The suspect I am talking about is Willie Arthur Sneed.

"Q Okay.

"A And there was notes on the record that he was possibly driving a '66 Plymouth.

"Q That Sneed was?

"A Yes, a light blue car.

"Q Did you have any information—Was your information on just Sneed, or did you have information on—about anybody else or whether he was wanted all by himself or what?

"A No, sir. The only information that I had was with Willie Arthur Sneed.

"Q What was the description of the vehicle that you got?

"A It was a light blue, '66 Plymouth. I received the last three digits of the license number, but I didn't have the first two digits—first three letters of the license plate.

"Q Were you able to ascertain who this vehicle belonged to?

"A Yes, sir, it belonged to Lennie Keith Armstrong.

"Q Okay. So, what was your purpose in stopping the car? Did you place him under arrest when you stopped him or what happened?

"A I asked him for their identification.

"Q Did they produce identification?

"A Yes, sir. When they identified theirselves, I advised them they were under arrest for investigation of burglary."

Officer Murphy also testified that appellant consented to the search of his car which revealed the stolen items.

On cross-examination Murphy stated that his first knowledge about a '66 Plymouth being involved in a burglary came from another officer about a week prior to appellant's arrest. He said that he and the other officer looked in the records and found that Willie Arthur Sneed was wanted on an outstanding warrant and that he was possibly driving a light blue '66 Plymouth. The car was first seen by Murphy the day before the arrest of appellant. He said he saw it parked in the 2700 block of Dillard Street and that on the next day he saw the car again but it "appeared that it had been painted over with spray cans like you buy in the store," giving it the "black over blue" appearance he described during his testimony at the trial. Murphy further stated that he did not know that the car belonged to appellant until after the arrest when he checked the registration number of the car.

The legality of the search hinges on whether or not the facts and circumstances recited by Officer Murphy were sufficient to justify his initial stop of appellant's car.

In *Colston v. State*, 511 S.W.2d 10 (Tex. Cr.App.1974) the arresting officers relied on a federal narcotics agent's detailed teletype message that a car fitting the description of Colston would be in the Waco area. The message named Colston and his companion, gave the color, make and license number of the car and indicated that the persons were armed and believed to be carrying narcotics. The Waco officers ran a license check and determined that the vehicle was registered to Colston at a Waco address. An officer spotted the vehicle parked at a lounge, radioed for back-up officers and then arrested Colston as he was about to enter the car.

We held the search of Colston's vehicle invalid, stating:

"The officers involved did not rely upon any unusual conduct on the part of the appellant observed by them to conclude that criminal activity may be afoot and that the appellant may be armed and dangerous for their 'probable cause' to investigate, but relied solely upon the teletype. They had a right to rely thereon and assume the officer causing the same to be issued had 'probable cause' for an investigative stop, but where the record fails to reflect that the issuing officer had such 'probable cause,' the investigative stop is not insulated from challenge. *Whiteley v. Warden, Wyoming State Penitentiary* [401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971)].

"The State might very well have proven probable cause, but it did not prove probable cause either for the warrantless arrest or investigative stop so as to justify the initial intrusion involved."

The information relied on by Officer Murphy is not so detailed as that provided by the federal narcotics agent's teletype message in *Colston, supra.* Furthermore, there were no suspicious circumstances involved in appellant's driving down the street in the middle of the day. There was no traffic violation to justify the stop as in *Hampton v. State*, 511 S.W.2d 1 (Tex.Cr. App.1974). There were no "specific, articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion" that the vehicle contained evidence of a crime. *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). The mere presence of a "black over blue '66 Plymouth" seven days after Officer Murphy received his information fails to justify a stop of appellant's car just as the "apparent Mexican ancestry" of a car's occupants failed to justify the auto search in *Brignoni-Ponce, supra.* Under the circumstances the trial court reversibly

erred in overruling appellant's Motion to Suppress.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.

## OPINION ON STATE'S MOTION FOR REHEARING

ONION, Presiding Judge.

In our opinion on original submission we reversed appellant's conviction for the offense of burglary of a habitation based on the illegality of the search involved.

■ On rehearing the State urges we reconsider our position. It argues that illegality of the search was not raised as a ground of error by the appellant. This argument, of course, overlooks the provisions of Article 40.09, § 13, Vernon's Ann.C. C.P., which requires this court to review unassigned error "in the interest of justice." [1] Further, the overruling of a pretrial motion to suppress is sufficient to preserve error in admission of evidence which was the subject of the motion to suppress. *Riojas v. State*, 530 S.W.2d 298 (Tex.Cr. App.1975); *Writt v. State*, 541 S.W.2d 424 (Tex.Cr.App.1976).

We shall, however, reexamine the search question. The record reflects that about

2:30 p. m. on January 5, 1975, Lieutenant L. T. Murphy of the Ft. Worth Police Department, Patrol Division, stopped a car driven by the appellant on the east side of Ft. Worth. There was another man and a woman in the car. The purpose of the stop was for "identification" and "possible suspects in burglaries." The appellant displayed his driver's license upon request, and Murphy asked if he knew a "Willie Arthur" and appellant said he did not. The officer then asked the other man for identification, and upon learning he was Willie Arthur Sneed, arrested him on an outstanding warrant. He then asked the appellant to open the car trunk and there found a television set, a calculator, tape players, a trumpet and a case and other items which appellant claimed as his. Appellant and the woman, Alice Miller, were arrested for investigation of burglary and taken to jail. Later that evening Prince Charles Ray discovered upon his return home that his house had been burglarized and that items found in appellant's trunk had been taken. This was reported to the police.

The question presented is whether Lt. Murphy was authorized to make the stop involved. The record reflects that a week or ten days before Murphy received information concerning several burglaries. He testified, "I had received information from the Records Bureau and other officers that

---

1. On original submission from the record before us it clearly appeared that there was a serious question as to the legality of the search and there was evidence that there had been a hearing on a motion to suppress which it was concluded might shed some light on the search question which is of constitutional dimension. Fourth Amendment, United States Constitution; Article I, § 9, Texas Constitution. The judge assigned the cause requested the transcription of hearing on suppression motion from the trial court through a staff member of this court. When this matter was brought to the attention of the entire court, the majority approved the action taken in light of the original record forwarded to this court. In *Guzman v. State*, 521 S.W.2d 267, 272 (Tex.Cr.App. 1975), this court approved the State placing material in the record almost three months after the approval of the record by the trial court and relied upon such material in affirming the conviction. In *Schroeder v. State*, 543 S.W.2d 382 (Tex.Cr.App.1976), the record was

supplemented after the approval of the record and after the appellate briefs had been filed. This was without notice to the appellant. The conviction was affirmed. See also *Ellis v. State*, 543 S.W.2d 135, 137 (Tex.Cr.App.1976); *Almand v. State*, 536 S.W.2d 377 (Tex.Cr.App. 1976). In *Davis v. State*, 499 S.W.2d 303 (Tex. Cr.App.1973), the cause was reversed because the court failed to make findings of fact and conclusions of law as to the voluntariness of the confession as required by Article 38.22, Vernon's Ann.C.C.P. While the case was pending rehearing, the trial court who had lost jurisdiction of the case made such findings which had not previously been in existence and forwarded a supplemental transcript to this court. On rehearing the findings were considered, the reversal was set aside and the conviction affirmed. The supplemental material in all these cases benefited the State's case. Judge Douglas frequently writes, "A good rule works both ways." We find adequate precedent for consideration of the search question.

a certain vehicle and suspects were wanted on several burglaries. I went to the Records office at this time and looked up the record of the suspect and did see a 'wanted' on this suspect," [2] which he indicated was Willie Arthur Sneed. He related that his information included the fact that Sneed was "possibly" driving a light blue 1966 Plymouth and that he received only the last three digits of the license number. Murphy stated at the time he knew Sneed only by name and did not know what he looked like.

The original source of the information about the burglaries and the car that Murphy received was not revealed. Whether it came from some informer's tip or merely reflected the suspicions of other officers is not shown. Nor was it reflected when or where the burglaries occurred.

On January 4, 1975 Murphy observed a light blue 1966 Plymouth parked in the 2700 block of Dillard Street. The next day about 2:30 p. m., while on patrol, he saw a 1966 Plymouth being driven in the 2600 block of Dillard Street. The car was black over blue and appeared to have been "painted over with spray cans like you buy in the store." It appeared to Murphy to be the same car he had seen the day before, and when he checked the license plate it was. Whether, however, the license plate involved the last three digits that Murphy had earlier received is not reflected by the record.

Upon observing the car in the 2600 block of Dillard Street, Murphy decided to make a stop to check identification of possible burglary suspects.

█ It is well settled that "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617 (1972); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In such

circumstances the prosecution need not demonstrate that probable cause to arrest a suspect existed at the inception of the detention, although such a detention is within the protection of the Fourth Amendment of the United States Constitution, *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), and Article I, § 9 of the State Constitution. This court has frequently said that circumstances short of probable cause for arrest may justify temporary detention for the purposes of investigation since an investigation is considered to be a lesser intrusion upon the personal security of the individual. *Leighton v. State*, 544 S.W.2d 394 (Tex.Cr.App.1976); *Ablon v. State*, 537 S.W.2d 267 (Tex.Cr.App. 1976); *Mann v. State*, 525 S.W.2d 174 (Tex. Cr.App.1975); *Hernandez v. State*, 523 S.W.2d 410 (Tex.Cr.App.1975); *Borner v. State*, 521 S.W.2d 852 (Tex.Cr.App.1975); *Wood v. State*, 515 S.W.2d 300 (Tex.Cr.App. 1974); *Baity v. State*, 455 S.W.2d 305 (Tex. Cr.App.1970), cert. den., 400 U.S. 918, 91 S.Ct. 180, 27 L.Ed.2d 158. And it has been held that an occupant of an automobile is just as subject to a brief detention or stop as is a pedestrian. *Adams v. Williams, supra; Wood v. State, supra; Hazel v. State*, 534 S.W.2d 698 (Tex.Cr.App.1976).

█ The totality of the circumstances surrounding the incident are looked to in determining whether the police conduct was reasonable. *State v. Hocker*, 113 Ariz. 450, 556 P.2d 784 (1976); *State v. Gastelo*, 111 Ariz. 459, 532 P.2d 521 (1975). While a temporary investigative detention is allowed under certain circumstances, these circumstances must be such as to distinguish the activity of the detained person from that of any other citizen and must be based on an objective perception of events rather than the subjective feelings of the detaining officer. In order to justify the intrusion, the law enforcement officer must have specific, articulable facts, which in the light of his experience and general knowledge, together with other inferences from

---

**2.** At the trial on the merits Murphy stated there was an outstanding warrant for Sneed, but the warrant was not otherwise described. We do not know for what offense the warrant was issued.

those facts, would reasonably warrant the intrusion on the freedom of the citizen detained for further investigation. *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Terry v. Ohio, supra; Ablon v. State, supra; Mann v. State, supra; Hernandez v. State, supra.* Thus, even in the absence of bad faith, detention based "on a mere hunch" is illegal. There must be a reasonable suspicion by the law enforcement officer that some activity out of the ordinary is or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to crime. *State v. Fortier*, 113 Ariz. 332, 553 P.2d 1206, 1208 (1976); *State v. Hocker, supra; Irwin v. Superior Court of Los Angeles County*, 1 Cal.3d 423, 82 Cal.Rptr. 484, 462 P.2d 12 (1969). Where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful. *Irwin v. Superior Court of Los Angeles County, supra.*

In addition to the lack of reliability of the information Lt. Murphy had received, it is observed that at the time of the stop in the instant case there was no traffic violation, and Murphy did not observe any other offense being committed nor was there any evidence of suspicious criminal activity afoot. There was no suggestion of any illegality. Murphy did not know appellant or Alice Miller and had not received any information about them. He did not know Sneed except by name and did not know he was in the car until he produced identification. Although Murphy may have been acting in good faith, a detention based on a mere hunch is illegal. We hold that under the circumstances the detention here does not satisfy the above test. The detention here was just the sort of fishing expedition the Fourth Amendment and Article I, § 9 of the State Constitution, were designed to prohibit.

The State argues that even if the stop was illegal the appellant consented to the search of his car trunk and therefore the trial court did not err in overruling the motion to suppress evidence of the items found therein. The State urges that the consent to search, voluntarily made, dissipated the taint of the detention and made the fruits of the search admissible. See *Potts v. State*, 500 S.W.2d 523 (Tex.Cr.App. 1973).

▪ The "fruit of the poisonous tree" doctrine explained at length in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), serves to exclude as evidence not only the direct products but also the indirect products of Fourth Amendment violations. Evidence is not classified as a fruit requiring exclusion, however, merely because it would not have been discovered "but for" the primary invasion.

"Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Wong Sun v. United States*, 371 U.S. at 488, 83 S.Ct. at 417, 9 L.Ed.2d at 455.

When it has been established that there was an illegal seizure, the State "has the ultimate burden of persuasion to show that its evidence is untainted . . . [B]ut at the same time [the defendant] . . . must go forward with specific evidence demonstrating taint." *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

By consenting to a search, an individual may waive his constitutional right and dispense with the question of the legality of an arrest or detention. Cf. *Potts v. State, supra.*

And it has been said that consent by the defendant, if sufficiently an act of free will to purge the primary taint of the unlawful arrest or detention (*Wong Sun v. United States, supra*, 371 U.S. at 486, 83 S.Ct. at 416) may produce the requisite degree of "attenuation." See *State v. Fortier*, 113 Ariz. 332, 553 P.2d 1206 (1976); *People v. Sesslin*, 68 Cal.2d 418 at 428, 67 Cal.Rptr. 409 at 416, 439 P.2d 321 at 328 (1968), cert.

den., 393 U.S. 1080, 89 S.Ct. 850, 21 L.Ed.2d 772.

Before consent is deemed effective, however, the prosecution must prove by clear and convincing evidence that the consent was freely and voluntarily given, *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968); *Paprskar v. State*, 484 S.W.2d 731 (Tex.Cr.App.1972), and neither physically nor psychologically coerced. *Potts v. State, supra* ; 51 Tex. Jur.2d, Part 1, Searches and Seizures, § 42, p. 722. See also *Phelper v. Decker*, 401 F.2d 232 (5th Cir. 1968).

The issue of whether consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Resendez v. State*, 523 S.W.2d 700 (Tex.Cr.App.1975); *Potts v. State, supra; United States v. Fike*, 449 F.2d 191 (5th Cir. 1971); *State v. Jensen*, 111 Ariz. 408, 531 P.2d 531 (1975); *State v. Fortier, supra.*

In the instant case there was some conflict in the testimony about how the trunk of the car was opened. At the hearing on the motion to suppress Lt. Murphy, who related he was in uniform and armed at the time, stated he asked the appellant to open the car trunk and he did. He stated he had just finished arresting Willie Sneed and handcuffing him, and from his trial testimony it appears he had placed the appellant under arrest prior to his request to have the trunk opened. No warnings were given as to appellant's right to refuse to consent. At the hearing on the motion to suppress Willie Sneed testified that after his arrest Murphy asked for the keys and opened the trunk himself. The appellant testified that Murphy handcuffed Sneed and placed Sneed in the police car and then asked for the keys, which he gave the officer as he felt he had no other choice. He related that the preceding November he had been arrested by police officers and taken on the other side of a police car and beaten up.

 The fact that a person is under arrest does not, in and of itself, prevent a free and voluntary consent from being given, *Potts v. State, supra; Valerio v. State*, 494 S.W.2d 892 (Tex.Cr.App.1973); *Weatherly v. State*, 477 S.W.2d 572 (Tex.Cr.App. 1972); *Brown v. State*, 443 S.W.2d 261 (Tex. Cr.App.1969), and there is no requirement that a person be informed of his right to refuse to consent before the consent can be held to be free and voluntary. *Schneckloth v. Bustamonte, supra; DeVoyle v. State*, 471 S.W.2d 77 (Tex.Cr.App.1971).[3] While this is true when the fact of the illegal detention is considered in the light of all other circumstances, we conclude the evidence was seized through exploitation of the illegal stop rather than "by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States, supra.* The State did not sustain its burden.

The State's motion for rehearing is overruled.

DOUGLAS, Judge, dissenting.

A full recitation of what occurred will be set out. After the case was tried, appellant and his counsel were apparently satisfied that the officers had a right to stop the automobile because the appellate brief filed with the trial court did not raise this as a ground of error. This matter was not raised in the record or in any way when it reached the Court. Article 40.09, V.A.C. C.P., controls what matters shall be included in the record. Section 2 of the Article provides:

> "Each party may file with the clerk a written designation specifying matter for inclusion in the record. The failure of the clerk to include designated matter will not be ground for complaint on appeal if the designation specifying such matter be not filed with the clerk within

---

**3.** In *DeVoyle v. State, supra*, it was held to be good police practice to give such warnings although not required.

sixty days after notice of appeal is given."

Appellant did not designate any of the matter that is used for reversal to be included in the record and filed no complaint to the record within sixty days after notice of appeal was given.

Section 5 of Article 40.09 provides that the court reporter shall report any portion of the proceeding requested by either party or directed by the court. This record is to be paid for by the appellant or if he is indigent it is to be paid for by the general funds of the county where the offense was alleged to have been committed.

No bill of exception was filed under Section 6(a) of Article 40.09. Section 7 provides that the court shall approve the record within fifteen days after notice of completion of the record if there is no written objection to it. In the present case there was no objection to the record.

Section 15 of Article 40.09 does not give this Court authority to order a trial court to prepare a record not designated by either party. It only gives this Court the authority to send for any original paper or exhibit for its inspection.

The trial judge was not given an opportunity to pass upon this ground of error.

In the commentary under Article 40.09, the Honorable W. A. Morrison, formerly of this Court, wrote:

". . . [I]f a trial judge were given an opportunity to study the record of the trial over which he had presided, read briefs and hear argument on the points raised, in many cases he would recognize the fact that reversible error was in the case and that he would promptly grant a new trial and set the case down at once for retrial, thus avoiding the inherent delay occasioned by an appeal and protecting his appellate record of which so many able trial judges are justifiably proud."

The advice given by Judge Onion in his commentary to the Article should be observed. It is as follows:

"The time limits for designating material in the record, filing the record, etc., are all set out in the article and should be carefully read."

Judge Onion also wrote in his commentary as follows:

"This procedure allows the trial court full opportunity to examine the completed record, hear arguments and study briefs and grant a new trial to the same extent as would the appellate court. The defendant after seeing the completed record may present errors on which he intends to rely on appeal to the trial court.

"While the time between conviction and appeal will be undoubtedly lengthened in some cases, the number of cases appealed should be reduced and many unnecessary reversals eliminated."

In *Conerly v. State*, 412 S.W.2d 909 (Tex. Cr.App.1967), a motion for extension of time to file a statement of facts and his affidavit of inability to pay for the same filed after the record on appeal had been approved by the court without objection and filed with the clerk came too late.

In *Utsman v. State*, 485 S.W.2d 573 (Tex. Cr.App.1972), the refusal of the court to grant an extension of time to file a statement of facts was not abuse of discretion where the motion for extension was filed on the last day to file statement of facts and had not been ordered at any time.

Not only was the statement of facts on motion to suppress not properly before the Court, it should never have been prepared. A member of the staff was directed, without authority of the Court, to have the trial court see that a statement of facts on the motion to suppress was filed in this Court. After the majority of the Court was advised that the additional record was here on the unauthorized request, it still considered it. Not only has the majority of the Court sanctioned the unauthorized action, it has erroneously decided the case upon the facts. It should be remembered that only unreasonable searches are forbidden.

On original submission and on motion for rehearing the majority rules that the initial

stop of the car that appellant was driving was illegal. The search was made with the consent of Armstrong after the officer had cause to stop the car.

There was no objection that the original arrest and detention were illegal. In *Cherry v. State*, 488 S.W.2d 744 (Tex.Cr.App. 1972), cert. denied, 411 U.S. 909, 93 S.Ct. 1538, 36 L.Ed.2d 199, this Court held that a ground of error and argument in its support that the "trial court erred in overruling appellant's motion to suppress the fruits of the search of the motel room in which the events in question occurred" were not specific enough to comply with Article 40.09, Section 9, V.A.C.C.P., governing an appeal brief. It was not considered. More notice was given the trial judge in that case than was given in the present case where no motion to suppress was mentioned in the brief.

The objection was insufficient in the present case and the record is not properly before us. But with the help of the majority acting in lieu of counsel designating a part of the record after the time has been expired,[1] it will be assumed for the sake of argument that the question of the search is properly before us.

Approximately a week to ten days before the burglary, Lieutenant L. T. Murphy of the Fort Worth Police Department and other officers received information that Willie Arthur Sneed and a car were wanted in connection with several burglaries. A warrant had been issued for Sneed. Officer Murphy had been given the last numerals of the license plate of the car.

At about 2:30 p. m. on January 5, 1975, Officer Murphy stopped the car on the east side of Fort Worth. Appellant, the driver, after giving consent to a search, opened the trunk with his key. It contained a portable color television set, an electronic calculator, two tape players, a trumpet and other items. Appellant stated that these items belonged to him. Murphy then arrested

appellant and took the items from the trunk to the city hall. Sneed, a passenger in the car, was arrested on the outstanding warrant.

At approximately 7:00 p. m. the same day, Prince Charles Ray returned to his home on the east side of Fort Worth and found that his house had been broken into and discovered that the items which had been found in the trunk of appellant's car were missing.

The State contends that the stop of appellant's vehicle was for proper investigatory purposes. The Fourth Amendment does not require a policeman who lacks the quantum of information necessary for probable cause to simply shrug his shoulder and allow a crime to occur or a criminal to escape. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Circumstances which are insufficient to establish probable cause for arrest may justify temporary detention for purposes of investigation since an investigation involves a lesser intrusion upon the personal security of an individual than does an arrest. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Baity v. State*, 455 S.W.2d 305 (Tex.Cr.App. 1970), cert. denied, 400 U.S. 918, 91 S.Ct. 180, 27 L.Ed.2d 158. Such purposes may include determination of the identity of a suspicious individual or momentary preservation of the status quo in order to obtain more information. *Adams v. Williams, supra; Wood v. State*, 515 S.W.2d 300 (Tex. Cr.App.1974). We reaffirmed this principle in the recent decision of *Ablon v. State*, 537 S.W.2d 267 (Tex.Cr.App.1976).

An occupant of an automobile is just as subject to a brief detention as is a pedestrian. *Adams v. Williams, supra; Wood v. State, supra.* See *Hazel v. State*, 534 S.W.2d 698 (Tex.Cr.App.1976). Of course, the officer must have specific and articulable facts which, in light of his experience and general knowledge, reasonably warrant such a stop. *Terry v. Ohio, supra; United*

---

1. The majority has not determined who is to pay for the record. Many future appellants will raise grounds of error with no record in an effort to have a majority of this Court order it to save that cost.

*States v. Brignoni-Ponce*, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *Baity v. State, supra.*

In the instant case Officer Murphy had sufficient information to warrant an investigative stop of appellant's vehicle. He was aware of the outstanding warrant on Sneed. Knowing that Sneed might be driving a light blue 1966 Plymouth, he observed that appellant's vehicle was a "black over blue" 1966 Plymouth. He further observed that the car recently had been painted with a spray can "like you buy in the store." The officer also knew the last three numerals of the license plate of the wanted automobile.

Officer Murphy had seven years' experience. In light of his experience and general knowledge, he articulated specific facts which, taken together with the rational inferences from those facts, reasonably indicated appellant's vehicle had been involved in criminal activity. He determined that the investigative stop was necessary in order to obtain further information. The stop was justified.

In view of the legality of the initial stop, the items seized from the trunk of the vehicle were properly admitted into evidence. Upon learning of Sneed's identity, the officer was authorized to arrest him on the outstanding warrant. Appellant denied knowing Sneed. Under these circumstances, Murphy's request for permission to look in the trunk was reasonable. Appellant voluntarily consented to the search. See *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

The original opinion in this cause relied on *Colston v. State*, 511 S.W.2d 10 (Tex.Cr. App.1974). *Colston* is not in point. There, two Waco officers arrested Colston for the possession of a dangerous drug. They acted solely on the strength of a teletype dispatch sent by a federal narcotics agent. The source of the federal agent's information was never revealed, and if an informer was involved, there was no showing as to the reliability of such informer. We held that the officer who issued the dispatch had no probable cause for the arrest and an otherwise illegal arrest cannot be insulated from challenge by the decision of the arresting officer to rely on a fellow officer's determination of probable cause.

In the case at bar, Officer Murphy did not rely solely on the information he received from the Records Bureau and other officers. Rather, he went to the Bureau and looked up Sneed's record. The record contained information concerning the outstanding warrant on Sneed and the description of the vehicle involved in the burglaries. This information was sufficient to justify the investigative stop of the vehicle.

The majority holds that there was an illegal detention of Armstrong even though the officer had a description of the car that had been used in the burglaries and knew that there was an outstanding warrant for Sneed. He also had information that Sneed was involved in the burglaries. The crude paint job on the car after the officer first saw it added to the information which gave the officer the right to detain the car. The majority did not give the trial judge a chance to pass upon the question. The investigation by the officer was reasonable. He had a right to arrest Sneed and then had consent to search the car.

The opinion on motion for rehearing states that the officer did not have reliable information. Does an officer have to question the circumstances under which a warrant was obtained before making a stop or arrest? The opinion also states that the warrant was not in the record. How does that affect the right of the officer at the time he made the arrest?

Practically every week we hear that this Court is the busiest appellate court in the nation. With all that happened in this case a defendant would be foolish not to appeal every case, because a majority might get him a free record on something he did not desire and then reverse the case.

The reversal should be set aside and the judgment of the conviction should be affirmed.