### PEOPLE v BELENOR

1. CRIMINAL LAW—PHOTOGRAPHIC IDENTIFICATIONS—SUGGESTIVENESS.

   A pretrial photographic identification procedure was not impermissibly suggestive where the witnesses were shown a group of 15 pictures, 13 were mugshots and 2 were snapshots, and defendant's picture was one of the mugshots.

2. CRIMINAL LAW—PHOTOGRAPHIC IDENTIFICATIONS—LINEUPS—SUGGESTIVENESS.

   A pretrial photographic identification could not have been unduly suggestive where all of the witnesses at the photographic identification failed to identify the defendant at a corporeal lineup about two weeks later.

3. CRIMINAL LAW—IDENTIFICATION AND CONFRONTATION—PRELIMINARY EXAMINATIONS—SUGGESTIVENESS.

   The totality of the circumstances must be analyzed when evaluating for suggestiveness a confrontation and identification at a preliminary examination.

4. CRIMINAL LAW—IN-COURT IDENTIFICATIONS—ADMISSIBILITY—CREDIBILITY—WITNESSES.

   The fact that witnesses were unable to identify a defendant goes to the credibility and not the admissibility of their subsequent positive in-court identification.

Appeal from Calhoun, Ronald M. Ryan, J. Submitted June 8, 1976, at Grand Rapids. (Docket No. 26516.) Decided August 24, 1976.

Richard Belenor was convicted of first-degree murder and armed robbery. Defendant appeals by leave granted. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4] 21 Am Jur 2d, Criminal Law §§ 334, 341, 368, 369.
[3] 30 Am Jur 2d, Evidence § 788.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *J. Thomas Schaeffer,* Special Assistant Prosecuting Attorney, for the people.

*F. Michael Schuck, III,* Assistant State Appellate Defender, for defendant.

Before: R. B. BURNS, P. J., and M. J. KELLY and S. S. HUGHES,* JJ.

S. S. HUGHES, J. Defendant appeals his conviction of first-degree (felony) murder, MCLA 750.316; MSA 28.548, and armed robbery, MCLA 750.529; MSA 28.797, for his part as one of three assailants in a May 18, 1971 incident at the Corner Post Restaurant in Battle Creek, Michigan.

Defendant's primary allegation on appeal is that his in-court identification as a perpetrator of the crime was so tainted by unnecessarily suggestive pretrial identification procedures that he should be awarded a new trial, or that, at the least, the case be remanded for an evidentiary hearing to determine if an independent basis existed for the subsequent in-court identifications.

Four witnesses were variously involved in the identification of defendant: Martha Cammauf, a customer at the restaurant; Myrle Potter, a customer and husband of the murder victim; Penny Burton, a waitress; and Mary Ann LeClear, a dishwasher. All of the witnesses but Ms. LeClear attended three corporeal lineups displaying various suspects and held on May 19, May 28, and June 15, 1971. Defendant was only displayed at the last lineup. All four of the witnesses viewed this lineup but none identified defendant; two of

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

them had mistakenly identified nonsuspects at prior lineups.

All four witnesses had been shown the same group of 15 photographs on either May 21 or May 25. Witness Cammauf found "similarities" between two photographs, one of which was of defendant, and the participants in the crime. Witnesses Burton and LeClear picked out defendant's photograph and said they saw certain similarities. Witness Potter, the last to view the pictures, was unable to identify anyone notwithstanding the fact that the photograph of defendant was specifically brought to his attention. All of the above-mentioned procedures were precustodial.

Defendant's preliminary examination was held on October 15, 1971. Defendant and one codefendant were dressed in prison garb and were the only black males in the courtroom. Witness Cammauf was still unable to identify defendant. Witnesses Burton and Potter, however, positively identified defendant as the man who had shot the victim. This testimony was repeated at trial and joined by that of Ms. LeClear (Ms. Cammauf had died in the interim).

Defendant's objection concerning this involved identification chronology is essentially two-fold: first, that the photographic identification procedure was so impermissibly suggestive as to violate due process and to taint the subsequent in-court identifications; and second, that the preliminary examination itself was similarly impermissibly suggestive with equal effect.

The trial court held an evidentiary hearing outside the presence of the jury and determined that the photographic identification procedure was not impermissibly suggestive. Of the same group of 15 pictures shown to each witness, 13 were "mug-

shots" and the remaining 2 were snapshots. The defendant's picture was one of the 13 mugshots. We think it obvious that the manner of this procedure was sufficiently "neutral".

Most significantly, it does not require an abundance of common sense to realize that any possible "suggestiveness" in the photographic display totally failed to register with the witnesses. The photographs were shown over two weeks *before* the corporeal lineup in which all four witnesses *failed* to identify defendant. The conclusion that this procedure was not unduly suggestive is compelling. A remand is thus unnecessary. *People v William Clark,* 68 Mich App 48; 241 NW2d 756 (1976).

Defendant's more persuasive contention is that the preliminary examination was itself impermissibly suggestive. He relies on *People v Solomon,* 391 Mich 767; 214 NW2d 60 (1974), which adopted by order the dissenting opinion of Chief Judge LESINSKI reported at 47 Mich App 208, 216; 209 NW2d 257 (1973). However, in *People v Manuel Johnson,* 58 Mich App 347, 353; 227 NW2d 337, 340 (1975), a panel of this Court correctly characterized the limited impact of *Solomon:* "The rule of the *Solomon* dissent is narrow; it does not establish the principle that all confrontations at preliminary examinations are impermissibly suggestive." Both *Solomon* and *Manuel Johnson* recognize the necessity of evaluating each confrontation for suggestiveness by analysis of the "totality of the circumstances".

The *Manuel Johnson* Court emphasized that the complaining witness had ample time to observe the defendant prior to and during the crime in finding that the preliminary examination was not impermissibly suggestive. Similarly, all four of the

instant witnesses clearly and completely observed defendant for a period of some minutes during perpetration of the robbery-murder. We cannot hold that these observations could not form an adequate independent basis for the in-court identification at trial.

It is granted that the cold record lends considerable weight to defendant's contention that his eventual identification lacked total credibility. Yet our system forces the belief that, absent extraordinary circumstances, a jury can tell who is lying and who is not. Whenever possible, the fact that witnesses were previously unable to identify a defendant should properly go to the credibility and not to the admissibility of subsequent positive in-court identifications. See *People v Harper,* 43 Mich App 500; 204 NW2d 263 (1972), *People v Tyrone Williams,* 37 Mich App 419; 195 NW2d 88 (1971). Our review of the record does not convince us that there has been a miscarriage of justice in this jury's apparent determination to believe the witnesses.

Defendant's other allegations of error have been considered and determined to be without merit. The conviction is affirmed.