570 P.2d 1252
**STATE of Arizona, Appellee,**

v.

**John Robert MYERS, Appellant.**

No. 3690.

Supreme Court of Arizona,
En Banc.

Oct. 17, 1977.

82

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, and Steven D. Sheldon, Asst. Attys. Gen., Phoenix, for appellee.

Ross Anderson, Phoenix, for appellant.

HAYS, Justice.

Defendant/Appellant John Robert Myers was charged by indictment with the armed robbery and attempted murder of David Ryan. The jury returned a verdict of guilty on both counts.

Appellant filed a timely Motion for Judgment of Acquittal and Motion for New Trial. These motions were denied. Appellant was sentenced to serve fifty years to life for the armed robbery and thirty to fifty years for the attempted murder. Appellant filed a timely Notice of Appeal, bringing his case within the jurisdiction of this court pursuant to A.R.S. § 13–1711.

### FACTS

At approximately 8:00 P.M. on September 30, 1975, Martin Jorgenson left a bar at 32nd Street and McDowell Road in Phoenix. Jorgenson testified that after he got into the 1976 Chevrolet Monte Carlo which he was driving, a man later identified as appellant approached the driver's window, pointed a sawed-off shotgun at him and told him to move over.

Another white male, Jerry Dean Williams, got into the back seat, and a black male, Steven Housley, came to the passenger's window and demanded Jorgenson's money. Housley ran away with the money. Appellant drove Jorgenson's car around the neighborhood for a few minutes looking for Housley; then appellant drove the car north. Appellant refused to allow Jorgenson to get out of the car. When appellant stopped at a traffic light, Jorgenson jumped out of the car and contacted the police.

Further testimony at trial indicated that after Jorgenson left the car, appellant and Williams drove around the Phoenix area and then to a U–Totem store near Bethany Home Road and the freeway in Phoenix. Appellant entered the store while Williams waited in the car.

The victim of the armed robbery and attempted murder, David Ryan, testified that he was outside the store when a man later identified as appellant approached him and asked if the store was closed. Ryan replied that the store was still open and asked appellant what he wanted. Appellant asked for some cigarettes. Ryan and the appellant went into the store. When they reached the counter, Ryan heard a noise, looked around and saw that appellant was removing a shotgun from his shirt.

Appellant told Ryan that he was aware of the store's trip camera and that if Ryan pulled the trip, appellant would shoot him. Ryan went to the cash register and opened it. He asked appellant if he wanted him to take the money out of the register or if appellant wanted to take the money out of the register himself. At this point, without any provocation from Ryan, appellant shot him with the sawed-off shotgun, critically injuring him.

Williams testified that when appellant returned to the car, he was carrying money and the shotgun. Williams also testified that he had heard a loud boom while appellant was out of the car, and that when appellant returned to the car, appellant told Williams that he just blew someone away. Williams stated that appellant told him he had told the man to put his hands on his head, and the man did; then the man moved his head and he [appellant] shot him.

A criminalist for the Phoenix Police Department testified at trial that an unused shell in the shotgun found in the vehicle stolen from Jorgenson was the same gauge and size as the shell which injured Ryan. The criminalist further testified that based upon his experiments, if this shotgun was used on Ryan, it was probably fired from a distance of three to six feet.

At the trial, Williams admitted that he was intoxicated at the time of the events and could not remember everything that happened that night. Defense counsel attacked Williams' credibility on this, and other bases.

Appellant raises fourteen issues on appeal. Because several of these issues overlap, we will consider a logical grouping of issues rather than discussing each individual issue as it is set forth in the briefs.

## THE IN–COURT IDENTIFICATION OF DEFENDANT BY THE VICTIM

Appellant argues that his constitutional right to due process of law was violated by permitting Ryan to identify him at the trial as the person who had robbed and shot him. It is a well-established rule of law that a criminal defendant has a due process right to a fair identification procedure. *See, e. g., United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *State v. Dessureault,* 104 Ariz. 380, 453 P.2d 951, *reh. denied,* 104 Ariz. 439, 454 P.2d 981, *cert. denied,* 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970). The primary concern of the law is that the identification be reliable. It is essential that the totality of circumstances surrounding the identification indicate that the defendant has not been mistakenly identified. *State v. Strickland,* 113 Ariz. 445, 556 P.2d 320 (1976); *State v. Dessureault, supra.*

In this case, the victim had been unable to identify the defendant in a photo lineup or in a live lineup. He testified that he could not identify the defendant in the photo lineup because police officers presented this lineup to him just two days after he was shot when he was still in the intensive care unit of the hospital and he did not have his glasses with him. Although Ryan borrowed the officer's glasses, he was not satisfied that he could see the photos clearly enough to identify anyone.

Ryan told police officers that the man who robbed and shot him had long reddish-brown hair, a mustache and hair on his face. At the live lineup, no participant had the amount of facial hair that Ryan had seen on his attacker. One participant had "pork chop" sideburns; at least one participant had a mustache, but otherwise all participants were clean-shaven. A police officer asked Ryan to imagine facial hair on all the lineup participants and then indicate which person looked most like his attacker. On this basis, Ryan did select a person who resembled his attacker, but Ryan also mentioned to the officer several ways in which the person he selected differed from the robber.

Because Ryan had not been able to identify the defendant previously, defense counsel sought to prevent him from identifying the defendant at the trial. Therefore, the trial judge held a hearing out of the presence of the jury. At this hearing Ryan testified regarding how long he had been

able to observe the robber, the lighting conditions at the time of observation, and the reasons for his inability to identify the defendant previously. Upon the request of the prosecutor, Ryan identified the defendant as the robber and attacker. The defendant, dressed in non-jail attire, was present at the hearing, with the approval of defense counsel. Ryan stated that he had no doubts that defendant was the person who had robbed him. At the conclusion of the hearing, the trial judge ruled that Ryan might be asked to identify the defendant at the trial.

At the trial, evidence was admitted showing Ryan's inability to identify the defendant in the photo and live lineups, and Ryan was extensively cross-examined regarding the accuracy of his present identification of the defendant. Ryan explained that one thing which helped him to identify the defendant at trial and which had hindered his identification efforts at the live lineup was that the defendant was very neatly groomed at the robbery and at trial, whereas no one in the live lineup had this appearance.

■ Appellant argues that the trial court committed reversible error in permitting Ryan to identify him at the hearing and trial because these identifications occurred under unduly suggestive circumstances. While we realize that the challenged identifications occurred when the victim was presented essentially with only one choice, the defendant, and we realize that such an identification involves a great risk of mistake, we believe that the trial court correctly determined that the identification *in this case* was accurate. The law does not preclude a victim from identifying his attacker, presented alone, at a later time just because the victim could not identify the attacker in a group earlier. All the law requires is that the identification occur in circumstances which assure that the identification is reliable. *Dessureault, supra.*

■ At the conclusion of the hearing, the trial judge had evidence to support a finding that Ryan's identification of the defendant was based on his contact with the defendant on the night of the robbery and not upon any suggestive influences which might be operating within the hearing. The identification of the defendant thus meets the due process requirement of fairness and reliability and also satisfies the test of *State v. Dessureault, supra.*

■ The trial judge had Ryan personally before him and was in a better position than we are to ascertain whether Ryan was making a reliable identification. Whether an in-court identification is accurate and is based upon fair procedures is a question which the trial court must decide, *State v. Dessureault, supra,* and the trial court's determination will not be overturned on appeal in the absence of clear and manifest error. *State v. Milonich,* 111 Ariz. 442, 532 P.2d 504 (1975); *State v. Williams,* 111 Ariz. 175, 526 P.2d 714 (1974). We find no such error here.

Regarding appellant's argument that the victim's identification of the appellant at the pretrial hearing somehow tainted the in-court identification, we have already indicated that the trial court could properly conclude that the identification at the hearing was reliable and not due to any suggestiveness inherent in the hearing. To answer appellant's argument more completely, we note that if the hearing had ended after the victim had been questioned as to his basis for identifying his attacker, an in-court identification would have to be permitted because there was no indication that an in-court identification would be tainted by previous identification procedures and there was evidence that the in-court identification (if any) would be based on the victim's contact with the robber on the night of the crime. *See Dessureault, supra.*

■ The case of *People v. Belenor,* 71 Mich.App. 10, 246 N.W.2d 355 (1976), is very similar factually to the case before us. We agree with the *Belenor* court's well-reasoned holding that "[w]henever possible, the fact that witnesses were previously unable to identify a defendant should properly go to the credibility and not to the admissibility of subsequent positive in-court identifi-

cations." 246 N.W.2d at 357; *see also People v. Williams*, 37 Mich.App. 419, 195 N.W.2d 88 (1971).

The appellant had a full and complete opportunity to aggressively cross-examine Ryan regarding the credibility of his in-court identification and did so. Thereafter, the question of credibility was for the jury.

## ADMISSION OF EVIDENCE OF OTHER CRIMES

Appellant next argues that the trial court erred in admitting evidence of the robbery, car theft, and kidnapping of Jorgenson earlier in the same evening that Ryan was robbed and shot.

■■■ It is an undisputed rule of law that evidence tending to show that the defendant committed crimes other than the crime for which he is presently being tried is usually inadmissible. *State v. Mitchell*, 112 Ariz. 592, 545 P.2d 49 (1976); *State v. Jaramillo*, 111 Ariz. 2, 522 P.2d 1079 (1974). However, there are several well-recognized exceptions to this general rule. Evidence of other criminal acts is admissible if it tends to show motive, intent, the absence of mistake or accident, a common scheme or plan, or the identity of the person who committed the crime charged in the present trial. *State v. Mitchell, supra*. Such evidence is also admissible when it is so blended or connected with the crime for which the defendant is now on trial that proof of one crime incidentally involves the other or explains the circumstances of the other crime. *State v. Villavicencio*, 95 Ariz. 199, 388 P.2d 245 (1964). The jury may receive evidence necessary to achieve a complete understanding of the circumstances surrounding the crime. *State v. Jackson*, 112 Ariz. 149, 539 P.2d 906 (1975).

■■■ In this case, the evidence of the kidnapping, auto theft, and robbery of Jorgenson was admissible to help identify the appellant as the person who robbed and shot Ryan. The fact that Ryan identified appellant as the one who robbed and shot him does not render additional evidence of the identity of the criminal inadmissible, even though the additional evidence indicates that the appellant committed other crimes. *See State v. Mitchell, supra*, and *State v. Thomas*, 110 Ariz. 106, 515 P.2d 851 (1973). As we have previously held, "where the identity of the defendant is the question in issue, any fact which tends to establish the identity has probative value and if offered for that purpose it is receivable." *State v. Francis*, 91 Ariz. 219, 222, 371 P.2d 97, 99 (1962).

■■■ Evidence of the other crimes was also properly admitted to complete the story of the crimes for the jury. Evidence of other crimes can be admitted when it is so interrelated with the crime with which the defendant is presently charged that the jury cannot have a full understanding of the circumstances without such evidence, *State v. Foggy*, 101 Ariz. 459, 420 P.2d 934, *cert. denied*, 386 U.S. 1025, 87 S.Ct. 1386, 18 L.Ed.2d 468 (1967). The facts of the several crimes which appellant allegedly committed in the same evening are so interrelated and interdependent that it is almost impossible to separate evidence relating to the robbery and shooting of Ryan from evidence relating to the crimes against Jorgenson.

Williams, appellant's companion, testified that he and the appellant had been together most of the day drinking and smoking marijuana. He also testified that they had been talking all day about robbing places. Within approximately a four-hour time span, appellant allegedly committed two armed robberies, a kidnapping, a car theft, and an attempted murder. He was arrested, not for the robbery and attempted murder, but because officers noticed that he was driving a car which had been reported stolen. Before he was arrested, he led officers on a high-speed chase reaching speeds of 100 miles per hour, abandoned the still moving car, which crashed into a parked vehicle, and fled on foot through yards and alleys of a residential neighborhood. The weapon used in the crimes against Jorgenson and Ryan was found in the stolen car.

The jury needed to hear evidence of the other crimes in order to understand such

things as how and why appellant was arrested, how he was linked to the robbery and shooting of Ryan, and whether Williams' testimony regarding the robbery and attempted murder of Ryan was credible. (Evidence of the other crimes indicated that Williams was with appellant before and after the crimes against Ryan. This corroborated Williams' testimony that he was with appellant during the robbery and shooting of Ryan and lent credence to Williams' statements regarding this robbery and shooting). Any effort to excise evidence of the other crimes from the evidence presented at appellant's trial for the robbery and attempted murder of Ryan would deprive the jury of vital evidence necessary to decide the case, for the jury then would have only a very incomplete story of the crimes. The evidence of the other crimes was properly admitted to complete the picture for the jury. *State v. Foggy, supra; State v. Villavicencio, supra.*

### THE MOTION FOR CHANGE OF JUDGE FOR CAUSE

Appellant charges that he was denied a full and fair hearing on his motion for change of judge for cause.

Fifteen minutes before trial was to begin, appellant's attorney was notified that the trial would be before the Honorable Rufus C. Coulter, Jr. Upon learning this, appellant's attorney announced that he would file a motion for change of judge for cause. A hearing was held upon this motion a few hours later the same day. At the hearing, appellant's attorney presented an affidavit alleging essentially that Judge Coulter had expressed the opinion that criminals were presently being treated too leniently. Appellant's attorney requested a five-day continuance in order to procure witnesses and other evidence of Judge Coulter's alleged bias and prejudice.

At the conclusion of the hearing, the Honorable C. Kimball Rose denied the motion for continuance and the motion for change of judge.

The rules of law governing change-of-judge motions are essentially the same in civil as in criminal cases. *State v. Neil,* 102 Ariz. 110, 425 P.2d 842 (1967).

17 A.R.S. Rules of Criminal Procedure, rule 10.1 provides:

Change of judge for cause

a. Grounds. In any criminal case the state or any defendant shall be entitled to a change of judge if a fair and impartial hearing or trial cannot be had by reason of the interest or prejudice of the assigned judge.

Bias and prejudice means a hostile feeling or spirit of ill-will, or undue friendship or favoritism, towards one of the litigants. The fact that a judge may have an opinion as to the merits of the cause or a strong feeling about the type of litigation involved, does not make the judge biased or prejudiced. (citations omitted). *In Re Guardianship of Styer,* 24 Ariz.App. 148, 536 P.2d 717 (1975).

Appellant's affidavit did not contain any allegations which could support the conclusion that Judge Coulter had "a hostile feeling or spirit of ill-will, or undue friendship or favoritism, towards" the appellant. Assuming that the allegations in the affidavit were all true, they merely indicated that Judge Coulter felt that less leniency should be shown to criminals; there was no indication that Judge Coulter was prejudiced against the appellant. Therefore, the motion for change of judge for cause was properly denied.

The motion for continuance was also properly denied. The granting of a continuance is a matter within the sole discretion of the trial court, and the decision will not be disturbed absent an abuse of discretion. *State v. Richie,* 110 Ariz. 590, 521 P.2d 1136 (1974).

There were no allegations in the appellant's affidavit which would support a finding that he could not get a fair and impartial trial before Judge Coulter. Even if Judge Rose had granted the continuance, the gathering of further evidence to support appellant's allegations would still not show that Judge Coulter was prejudiced

against the appellant, for no such prejudice was alleged. Therefore, there was no abuse of discretion by Judge Rose in refusing to grant the motion for continuance.

The record of the hearing indicates that appellant's attorney was given ample opportunity to explain his position and to explain what he believed he could prove if the continuance were granted. We believe that appellant had a fair and adequate hearing on the matter of changing judge for cause.

In support of his argument that the continuance should have been granted, appellant cites the provision of Criminal Rule 10.1 which permits the motion for change of judge to be filed within ten days after discovery of grounds for the change. 17 A.R.S. Rules of Criminal Procedure, rule 10.1(b). This matter was first mentioned in appellant's reply brief. Normally we would not consider an argument raised only in the reply brief because the appellee has no chance to respond to the reply brief. However, in order to dispel some confusion at the trial level, we will address this issue.

█ Appellant seems to suggest that rule 10.1(b) means that he should have been granted a continuance of ten days to gather evidence and witnesses even though his motion was filed immediately before trial. Appellant's interpretation of rule 10.1(b) would cause chaos in the trial court because this would allow an automatic ten-day continuance at any time during a trial that a party alleges grounds for change of judge for cause. In adopting the Rules of Criminal Procedure, this court had no intention of promoting such chaos in the trial court. Rule 10.1(b) must be interpreted in a way which promotes the orderly disposition of cases at the trial level.

█ We hold that rule 10.1(b) is properly interpreted to mean that a motion for change of judge for cause is deemed timely filed only if filed within ten days after discovery of the grounds for the change. Rule 10.1(b) does not mean that a party is entitled to a continuance of *any* length after he files, or states his intention to file, a motion for change of judge for cause. Motions for change of judge filed near the beginning of trial or during trial must be disposed of as quickly as justice allows so that proceedings in the trial court will not be unnecessarily prolonged. Continuances may still be granted at the sound discretion of the trial court.

## THE MOTION TO PROHIBIT THE STATE FROM INTRODUCING APPELLANT'S RECENT FELONY CONVICTION

█ The state informed appellant that, if he should testify at his trial, the state would impeach him by introducing evidence of a felony conviction entered against him a week earlier. Appellant argues that this was an unconstitutional burden upon his exercise of the right to testify in his own behalf. We disagree. This court has repeatedly held that it is proper to impeach the credibility of a defendant who testifies at his trial and that the use of a prior conviction to impeach his credibility does not impose an unreasonable burden on his constitutional right to testify. *State v. McDonald*, 111 Ariz. 159, 526 P.2d 698 (1974); *State v. Mayes*, 110 Ariz. 318, 518 P.2d 568 (1974); *State v. King*, 110 Ariz. 36, 514 P.2d 1032 (1973). *See also State v. Lewis*, 112 Ariz. 38, 537 P.2d 25 (1975).

## THE REQUESTED APPOINTMENT OF A GUARDIAN AD LITEM FOR THE MINOR PROSECUTION WITNESS

Appellant argues that he was denied due process because the court refused to appoint a guardian ad litem for a principal prosecution witness, Jerry Dean Williams, age 15. Appellant contends that a guardian ad litem was necessary to assure that the statements of Williams to the police and prosecution were voluntary and reliable. Appellant contends that he was denied a fair trial because Williams did not have the assistance of a guardian ad litem to guide him through pretrial investigations and interrogations and through the trial.

█ A guardian ad litem would be responsible for protecting Williams from incriminating himself. The privilege against

self-incrimination is a personal right and it may not be raised by a third person. *Rogers v. United States*, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951); *Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906); *McAlister v. Henkel*, 201 U.S. 90, 26 S.Ct. 385, 50 L.Ed. 671 (1906). Hence, appellant may not protest any possible violations of Williams' privilege against self-incrimination due to the lack of a guardian ad litem.

## NONDISCLOSURE OF THE JUVENILE RECORD OF THE PROSECUTION WITNESS WILLIAMS

Appellant charges that the trial court erred in failing to order the state to disclose the juvenile record of the prosecution witness Williams. Appellant is caught in a conflict between laws facilitating the fair trial of the accused and the laws protecting juvenile offenders. 17 A.R.S. Rules of Criminal Procedure, rule 15.1(a)(7), requires that the prosecutor make available to the defendant prior felony convictions of persons whom the prosecutor intends to use as witnesses at the trial, but A.R.S. § 8–207 states that the results of juvenile court proceedings are not convictions of crimes and that the disposition of a juvenile case may not be used against the young offender in any court proceeding except juvenile court or in a presentence report after conviction of a felony.

■ A fair trial requires that the accused be able to cross-examine effectively the witnesses against him. If the withholding of a prosecution witness' juvenile record makes it impossible for the accused to cross-examine the witness effectively, the state's policy of protecting juvenile offenders by refusing to disclose their records except in juvenile proceedings must give way to the accused's constitutional right to meaningful confrontation of witnesses. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). We do not find that the present case requires disclosure of the witness' juvenile record.

■ Appellant indicates in his brief that he sought Williams' juvenile record in order to impeach Williams' credibility, particularly his truthfulness. At trial, appellant introduced much evidence casting doubt on Williams' credibility, and appellant succeeded in bringing to the jury's attention the fact that Williams had had several previous dealings with juvenile authorities and that Williams was presently being held in the Arizona Youth Center. We do not believe that appellant was hampered in his ability to impeach Williams' credibility or truthfulness by the fact that he did not have Williams' juvenile record. Any additional information in the juvenile record would merely be cumulative on the matter of Williams' credibility. Therefore, appellant's constitutional right of confrontation was not violated by lack of access to Williams' juvenile records and the trial court did not err in refusing to order that the records be disclosed to appellant. We note that this case was tried before Arizona adopted the rules of evidence which became effective September 1, 1977.

## THE QUESTION OF WHETHER THE EVIDENCE WAS LAWFULLY SEIZED

Relying on *State v. Hocker,* 113 Ariz. 450, 556 P.2d 784 (1976), appellant argues that the trial court erred in failing to make a finding for the record that the evidence was lawfully seized. Appellant concedes that the trial court entered an order which denied his motion to suppress with respect to the search of appellant's person, with respect to the search of the automobile appellant was driving, and with respect to the fingerprinting and photographing of appellant.

*State v. Hocker, supra,* is not applicable to this case. In *Hocker,* the trial judge did not understand his duty to determine, as a matter of law, that evidence was lawfully acquired.

In the present case, the trial judge clearly was aware of his duty. At the conclusion of the motion to suppress, after hearing arguments on the evidence presented, the trial judge stated for the record that based

on the evidence presented, he was denying the motions to suppress. It is clear from the record that the trial court did not allow a question of law to be decided by the jury.

◼ While the trial court did not explicitly state that it found that the evidence had been lawfully seized, such a finding is implied in the fact that the court denied the motion to suppress based on the evidence presented. The evidence supports a finding that the objectionable evidence was lawfully seized and thus justifies the denial of the motion to suppress. The trial court committed no error in denying the motion to suppress or in failing to state explicitly that the court found the evidence to be lawfully seized.

### ADMISSIBILITY OF EVIDENCE SEIZED FROM APPELLANT AT THE TIME OF HIS ARREST

Appellant complains that items seized from his person at the time of his arrest should not have been admitted into evidence because the state did not prove that there was probable cause to arrest him and therefore the arrest was unlawful.

◼ It is well-established that a police officer may make a full search of a person incident to a lawful custodial arrest. *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973); *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *State v. Susko*, 114 Ariz. 547, 562 P.2d 720 (1977). Such a search is still lawful even if the items seized later prove not to be weapons, fruits, instrumentalities, evidence of the offense charged, or contraband:

> "The authority to search the person incident to a lawful custodial arrest, while based upon the need to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect." *Robinson, supra*, 414 U.S. at 235, 94 S.Ct. at 477, quoted in *Gustafson, supra*, 414 U.S. at 266, 94 S.Ct. at 492.

◼ A police officer may lawfully arrest without a warrant "[w]hen he has probable cause to believe that a felony has been committed and probable cause to believe the person to be arrested has committed the felony." A.R.S. § 13–1403(1). In the instant case the arresting officers had a very complete description of a stolen car, including the license number. The appellant was driving a car matching the description and having the license number of the stolen car. The appellant drove at very high speeds when he realized that the officers were following him. Finally, the appellant jumped from the still-moving car allowing it to crash into another car, and appellant ran away from the officers. These facts provide overwhelming probable cause to arrest the appellant. The arrest was clearly lawful.

After arresting appellant, the officers took him into custody. Therefore, a full search of appellant's person was lawful incident to the lawful custodial arrest, and items seized in this search were properly admitted into evidence.

### THE ADMISSIBILITY OF EVIDENCE SEIZED FROM THE STOLEN CAR

Appellant contends that evidence seized in the search of the stolen car should have been suppressed because no warrant was obtained for the search.

◼ Search warrants are required when the search invades an area in which a person has a reasonable expectation of privacy. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A thief has no reasonable expectation of privacy in the automobile which he has stolen particularly not after he has run away and abandoned the automobile. The items taken from the stolen car were properly admitted into evidence.

### ADMISSION OF PHOTOGRAPH OF APPELLANT'S HANDS INTO EVIDENCE

Appellant states that it was error to admit into evidence the photograph of his

hands because the photograph amounted to compelling him to give evidence against himself and because the photograph was irrelevant. For the reason stated below, we find that introduction of the photograph was not reversible error.

The privilege against self-incrimination only protects one from being compelled to give testimony against himself or providing the state with evidence of a testimonial or communicative nature. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *State v. Brierly*, 109 Ariz. 310, 509 P.2d 203 (1973).

A picture of appellant's hands is not testimonial or communicative evidence and therefore is not within the protection of the privilege against self-incrimination. The photograph should not have been suppressed on the basis of a violation of this privilege. *See also Ann.*, "Physical Examination or Test," 22 L.Ed.2d 909 (1969).

Regarding the irrelevance argument, the trial court properly admitted the photograph of appellant's hands, on the promise of the prosecutor that the exhibit would be connected up later. This admission of evidence was within the discretion of the trial judge who is allowed great latitude in determining the order of proof at trial.

However, evidence conditionally admitted is subject to a motion to strike if not connected up as promised *Ault v. International Harvester Co.*, 13 Cal.3d 113, 117 Cal.Rptr. 812, 528 P.2d 1148 (1975). When evidence is admitted upon the theory that it will be properly connected and a motion to strike is not subsequently urged, a party is deemed to have waived the objection to the evidence. *Ault, supra.*, 528 P.2d at 1154. Appellant's failure to move to strike the exhibit waived any possible objection he had to the exhibit.

In any event, in light of all the evidence introduced at trial, the photograph itself, even if improperly admitted, does not constitute reversible error. *See State v. Kelly*, 111 Ariz. 181, 190, 526 P.2d 720 (1974), *cert. denied*, 420 U.S. 935, 95 S.Ct. 1143, 43 L.Ed.2d 411 (1975).

Appellant also argues that he did not get a fair trial and that the trial court erred in denying his motion for acquittal. We find no merit in these arguments. Having examined the entire record and particularly reviewed the arguments raised on appeal, we find that appellant did receive a fair trial.

There was substantial evidence presented at trial to support a verdict of guilty as charged. A directed verdict of acquittal is not proper when there is substantial evidence to support a finding of guilty. *State v. Tostado*, 111 Ariz. 98, 523 P.2d 795 (1974). Thus, there was no error in denying the motion for acquittal.

Appellant further claims that the trial court abused its discretion by imposing an excessive sentence and that the sentence is cruel and unusual punishment.

Within statutory limitations, the sentence is left to the discretion of the trial judge and will not be modified unless it appears that the trial judge has abused his discretion. *State v. Quintana*, 92 Ariz. 308, 376 P.2d 773 (1962). Appellant was sentenced to fifty years to life for armed robbery and thirty to fifty years for the attempted murder; the sentences to run concurrently. Both of these sentences are within the statutory limitations. A.R.S. §§ 13–110, 13–453 and 13–643; *State v. Lenahan*, 12 Ariz.App. 446, 471 P.2d 748 (1970). Although the sentences are long, we find no abuse of judicial discretion in light of the appellant's record.

When sentencing, the trial judge should consider the circumstances of the offense and the moral character and past conduct of the person convicted so that he may impose a punishment which fits the character of the offense and the offender. *State v. Quintana, supra.*

Appellant was convicted of armed robbery, a crime which entailed the use of force or fear to obtain property from another human being. During that robbery, the appellant fired a sawed-off shotgun, a

weapon which inflicts extremely serious bodily injury, at the victim from a distance of three to six feet, evidencing that he had no regard for human life. Evidence, including the appellant's own statements to his companion, indicated that the shooting was entirely without provocation. Appellant's presentence report indicates that he continuously has been in trouble with the law since he was approximately eight years old and that his crimes have become progressively more violent. The trial judge was quite justified in believing that the appellant should be removed from society for a very long time.

We do not find that the sentences constitute cruel and unusual punishment. We are aware of no authority holding that a long prison term, justified by the circumstances of the crime and the offender's history and within the limitations imposed by the state legislature, is cruel and unusual punishment.

The judgments of conviction and sentences are affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.