NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

PATRICK DANIEL BARNES, *Appellant.*

No. 1 CA-CR 17-0171
No. 1 CA-CR 17-0500
(Consolidated)
FILED 8-30-2018

Appeal from the Superior Court in Maricopa County
No. CR2016-105613-001 DT
The Honorable Peter C. Reinstein, Judge (Retired)

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Office of the Legal Advocate, Phoenix
By Kerri L. Chamberlin
*Counsel for Appellant*

Patrick D. Barnes, San Luis
*Appellant*

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Kent E. Cattani joined.

W I N T H R O P, Judge:

¶1        Patrick Daniel Barnes appeals his convictions and sentences for arson of an occupied structure; attempt to commit fraudulent schemes and artifices; and for presenting a false, incomplete, or misleading insurance claim.  Barnes' counsel filed a brief in accordance with *Smith v. Robbins*, 528 U.S. 259 (2000), *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), stating she has searched the record for error but failed to identify any "arguable question of law that is not frivolous."  Barnes' counsel therefore requests that we review the record for fundamental error.  *See State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999) (stating that this court reviews the entire record for reversible error).  This court allowed Barnes to file a supplemental brief *in propria persona*, and he has done so, raising various arguments we address herein.

## FACTS AND PROCEDURAL HISTORY[1]

¶2        In the early morning hours of January 25, 2016, a 9-1-1 caller alerted authorities to a home on fire in Gilbert, Arizona.  When firefighters arrived on scene minutes later, the home was "fully involved" and in flames.  The first police officer on the scene evacuated nearby homes because "[t]here was enough brush between the houses that . . . the fire might travel to a different residence."  Homes to the north and south were evacuated.  Although there was a "sale pending" sign in the front yard, firefighters observed doors ajar and open windows on the south side of the involved home.  A gate at the back of the property that lead to a vacant property was also open.

¶3        After working to suppress the fire from the exterior, firefighters entered the home to extinguish the remaining hotspots.  Before entering the home, one of the firefighters smelled gasoline.  A K-9 accelerant

---

[1]        We view the facts in the light most favorable to sustaining the verdicts and resolve all reasonable inferences against Barnes.  *See State v. Fontes*, 195 Ariz. 229, 230, ¶ 2 (App. 1998).

detective dog also alerted to potential accelerants in the home. Upon additional examination, fire investigators discovered what looked like crowbar markings on one of the windows, indicating forced entry. After investigation, fire investigators concluded that the fire had been deliberately set.

¶4            Investigators determined the home belonged to Barnes and his ex-wife. A court had recently ordered the sale of the home in connection with divorce proceedings. The proceeds of the sale were to be split twenty-five percent to Barnes and seventy-five percent to his ex-wife. The court-appointed realtor changed the locks on the home and checked the home on an almost daily basis to ensure no doors or windows had been opened and no vandalism occurred. Several weeks before the fire, Barnes made a comment to neighbors, who he was unaware were a police officer and firefighter, that he had a plan to ensure his ex-wife would not receive any proceeds from the sale of the house. He also told his ex-wife "that he would burn the house down before [she] ever saw a red cent from the house."

¶5            According to cell phone records, Barnes' phone was near the home at about the time of the fire, but he left before the arrival of emergency crews. Barnes' cell phone was within proximity to the home until 4:17 a.m. "and then it migrated back west toward[] Chandler," where Barnes had recently rented an apartment. Video surveillance obtained from a neighboring home showed a white Chevy pickup with a ladder rack driving toward the home in the early morning hours on the day of the fire with the truck's headlights turned off. The video showed the white truck had a brake light out. Barnes owned a white Chevy pickup truck with a ladder rack and burned-out brake light.

¶6            Police officers stopped Barnes in close vicinity to the home the morning of the fire. Barnes had a crowbar and a cannister of linseed oil, an accelerant, in his truck when he was stopped. When later examined, Barnes' socks worn the day of the fire tested positive for gasoline. A t-shirt and pants taken from Barnes tested positive for fatty acids, which can be a byproduct of an accelerant, including linseed oil.

¶7            When questioned, Barnes stated he purchased the linseed oil for a friend who does woodworking. That friend, however, stated he had never used linseed oil and had never asked Barnes to purchase any for him. Video surveillance from a Lowe's store showed Barnes purchasing linseed oil on January 24, 2016, at 2:28 p.m., approximately twelve hours before the arson. The surveillance also showed Barnes getting into a white Chevy

truck with ladder racks and a burned-out brake light after he completed his purchase.

¶8        A grand jury indicted Barnes on six counts: count 1, arson of an occupied structure, a class 2 dangerous felony; counts 2, 3, and 4, endangerment, class 6 dangerous felonies; count 5, attempt to commit fraudulent schemes and artifices, a class 2 felony[2]; and count 6, presenting a false, incomplete, or misleading insurance claim, a class 6 felony.  The State filed an allegation of prior convictions for sentencing purposes.

¶9        The case proceeded to an eight-day trial.  After the State's case-in-chief, Barnes moved for a judgment of acquittal pursuant to Arizona Rule of Criminal Procedure 20.  The motion was denied.  The jury found Barnes guilty of count 1, arson of an occupied structure; count 5, attempt to commit fraudulent schemes and artifices; and count 6, presenting a false, incomplete, or misleading insurance claim.  The jury found Barnes not guilty of counts 2, 3, and 4, each a separate charge of endangerment for three firefighters who responded to the arson.

¶10        The trial court conducted the sentencing hearing in compliance with Barnes' constitutional rights and Arizona Rule of Criminal Procedure 26.  The court sentenced Barnes to a presumptive term of 10.5 years' imprisonment for count 1; 3 years' probation for count 5; and 3 years' probation for count 6 with the probation terms to begin upon Barnes' release from prison on count 1.  Barnes received credit for 401 days of presentence incarceration.  The trial court held a separate restitution hearing.  Barnes waived his presence at the hearing.  The court ordered Barnes to pay $170,262.31 to the insurance company and $10,255.86 to his ex-wife.

¶11        Barnes timely appealed.  We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A).[3]  Finding no reversible error, we affirm Barnes' convictions and sentences.

---

[2]        The indictment incorrectly classified count 5 as a class 2 felony.  Upon agreement by the court and the parties, count 5 was changed to a class 3 felony at the sentencing hearing.

[3]        Absent material revisions after the date of an alleged offense, we cite a statute's current version.

**ANALYSIS**

¶12        In his supplemental brief, Barnes raises four issues: (1) sufficiency of the evidence; (2) whether A.R.S. § 13-1701(2) is unconstitutionally vague and overbroad; (3) prosecutorial misconduct; and (4) whether his sentences are illegal.

     I.        *Sufficiency of the Evidence*

¶13        Barnes challenges the sufficiency of the evidence, arguing that the State failed to prove each element of the offenses beyond a reasonable doubt. "When reviewing the sufficiency of the evidence, an appellate court does not reweigh the evidence to decide if it would reach the same conclusions as the trier of fact." *State v. Guerra*, 161 Ariz. 289, 293 (1989). We will affirm if "substantial evidence" supports the guilty verdict. *Id.* Substantial evidence is "[m]ore than a scintilla and is such proof as a reasonable mind would employ to support the conclusion reached." *Id.* (quoting *State v. Tison*, 129 Ariz. 546, 553 (1981)). When evaluating the sufficiency of the evidence, we test the evidence "against the statutorily required elements of the offense." *State v. Pena*, 209 Ariz. 503, 505, ¶ 8 (App. 2005). The record here contains sufficient evidence, recounted above, to support Barnes' convictions.

¶14        As relevant to Barnes' conviction on count 1, "[a] person commits arson of an occupied structure by knowingly and unlawfully damaging an occupied structure by knowingly causing a fire." A.R.S. § 13-1704(A). In pertinent part, an "occupied structure" is any building "in which one or more human beings either is or is likely to be present or so near as to be in equivalent danger at the time the fire . . . occurs. The term includes any dwelling house, whether occupied, unoccupied or vacant." A.R.S. § 13-1701(2), (4).

¶15        The State presented cell phone data that demonstrated Barnes was in the vicinity of the arson during the time of its commission. Video surveillance captured an image of a white Chevy work truck with a ladder rack and a burned-out brake light immediately before the fire; Barnes owned a white Chevy work truck with a ladder rack and a burned-out brake light. When tested, certain items of Barnes' clothing from the day of the arson tested positive for gasoline or ignitable liquids. Barnes had a partially used can of linseed oil, an ignitable liquid, in his truck when he was taken into custody. Even if, as Barnes argues, there was no one in the home at the time of the fire, the State presented testimony that someone was likely to be present or in such proximity as to be in danger. First

responders observed both open doors and windows, suggesting the home was not vacant. Nearby homes were evacuated because there existed a possibility that the fire would spread. The State presented sufficient evidence for the jury to convict Barnes of arson of an occupied structure.

¶16 A person is guilty of attempted fraudulent schemes and artifices if, "pursuant to a scheme or artifice to defraud, knowingly obtains any benefit by means of false or fraudulent pretenses, representations, promises or material omissions." A.R.S. § 13-2310(A). In the context of section 13-2310(A), "a scheme or artifice is some plan, device, or trick to perpetrate a fraud." *State v. Henry*, 205 Ariz. 229, 232, ¶ 12 (App. 2003) (quoting *State v. Haas*, 138 Ariz. 413, 423 (1983) (internal quotation omitted)). A "benefit" under § 13-2310(A) is "anything of value or advantage, present or prospective." A.R.S. § 13-105(3).

¶17 An employee from Barnes' insurance company testified that Barnes called the insurance company at 10:30 a.m. the day of the arson to make a claim under his insurance policy, claiming he had no knowledge of the cause of the fire. Barnes also stated that he wanted to ensure that only his name was on any check issued for the claim made on the policy although Barnes' ex-wife was also insured under the policy. Barnes had previously attempted to remove his ex-wife as an insured under the insurance policy, but he was not able to do so because she was a co-owner of the property. The State presented sufficient evidence for the jury to convict Barnes of attempted fraudulent schemes and artifices.

¶18 A person commits presenting a false, incomplete, or misleading insurance claim if he:

> [p]resent[s], cause[s] to be presented or prepare[s] with the knowledge or belief that it will be presented an oral or written statement . . . to or by an insurer . . . that contains untrue statements of material fact or that fails to state any material fact with respect to . . . [a] claim for payment or benefit pursuant to an insurance policy.

A.R.S. § 20-463(A)(1)(c).

¶19 As previously noted, Barnes called his insurance company the day of the arson and filed a claim for the loss of the home. He claimed he had no knowledge of what may have caused the fire. Barnes made the "statement knowing that it contained false, incomplete, or misleading information that was material to the claim." The State presented sufficient

evidence for the jury to convict Barnes of presenting a false, incomplete, or misleading insurance claim.

¶20         On this record, we conclude that the State presented sufficient evidence that Barnes committed the offenses for which he was convicted.

> II.         *Section 13-1701(2)*

¶21         Barnes contends that the statute under which he was convicted of arson of an occupied structure is vague, overbroad, and violative of the Due Process Clause of the Fourteenth Amendment.  Barnes claims that, because "near" is not defined in the statutory definition of "occupied structure," this court should "interprete [sic] the statute so it mandates human presence in the home, or likely in the home."  We decline to do so.

¶22         As relevant here, an "occupied structure" is "any building . . . used for lodging, business, transportation, recreation or storage" wherein "one or more human beings either is or is likely to be present or so near as to be in equivalent danger at the time the fire or explosion occurs.  The term includes any dwelling house, whether occupied, unoccupied or vacant."  A.R.S. § 13-1701(2), (4).  The plain language of the statute does not require physical presence in a structure for it to be "occupied."  We decline to interpret the statute contrary to its plain language.

> III.         *Prosecutorial Misconduct*

¶23         Barnes argues that several instances of alleged prosecutorial misconduct warrant reversal.  Specifically, he claims that the prosecutor asked a witness to comment on Barnes' post-arrest silence and asked questions of witnesses intended to elicit "prohibited" testimony.

¶24         Prosecutorial misconduct warrants reversal only if "(1) misconduct is indeed present; and (2) a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying [the] defendant a fair trial."  *State v. Moody*, 208 Ariz. 424, 459, ¶ 145 (2004) (citation omitted).  Absent actual prejudice, prosecutorial misconduct is harmless error.  *State v. Hughes*, 193 Ariz. 72, 80, ¶ 32 (1998).  We will not reverse a conviction based on prosecutorial misconduct unless the conduct is "so pronounced and persistent that it permeates the entire atmosphere of the trial."  *State v. Lee*, 189 Ariz. 608, 616 (1997) (quoting *State v. Atwood*, 171 Ariz. 576, 611 (1992)).  Conduct that amounts to prosecutorial misconduct "is not merely the result of legal error, negligence, mistake, or insignificant impropriety, but, taken as a whole, amounts to intentional conduct which

the prosecutor knows to be improper and prejudicial, and which he pursues for any improper purpose with indifference to a significant resulting danger of mistrial." *State v. Aguilar*, 217 Ariz. 235, 238-39, ¶ 11 (App. 2007) (quoting *Pool v. Superior Court*, 139 Ariz. 98, 108-09 (1984)).

¶25 Barnes alleges that the prosecutor drew "an inference of consciousness of guilt" because he exercised his right to remain silent post-arrest. Under the Fifth Amendment and as a matter of due process, a person in police custody has the right to remain silent in response to interrogation, and, at trial, a prosecutor for the State generally cannot refer to or comment on a defendant's decision to exercise that right. *Miranda v. Arizona*, 384 U.S. 436, 474, 478-79 (1966).

¶26 At trial, the prosecutor engaged in the following colloquy with one of the officers who questioned Barnes after his arrest:

> **Q:** So then after he was placed under arrest, was he Mirandized again?
>
> **A:** Yeah. He was transported back to the Gilbert police headquarters into an interview room and I read him his Miranda rights.
>
> **Q:** And, again, did Mr. Barnes indicate to you that he understood those rights?
>
> **A:** He did.
>
> **Q:** And did he still wish to speak to you?
>
> **A:** At first he said he wanted his lawyer because the charges --

Barnes' attorney objected and approached the bench for a sidebar. Although he indicated he was going to move for a mistrial, Barnes' attorney conceded that, "[e]ventually, [Barnes] agreed to speak voluntarily." One who speaks voluntarily after receiving *Miranda* warnings has not remained silent. *Anderson v. Charles*, 447 U.S. 404, 408 (1980). Barnes received his *Miranda* rights, he acknowledged that he understood his rights, and then proceeded to speak with officers. The prosecutor did not comment on Barnes' right to remain silent—Barnes voluntarily spoke with officers.

¶27 Barnes also argues that the prosecutor continued his "campaign of the introduction of evidence that was prohibited by law"

during the testimony of various State witnesses. Barnes recites certain witness statements that he claims demonstrate the prosecutor intended to prejudice him and deprive him of his right to a fair trial.

¶28 During Barnes' trial, some witnesses' testimony touched on aspects of Barnes' divorce. For example, the court-appointed real estate agent noted that the process of changing the locks on the home was coordinated "with the Gilbert Police Department." The agent also testified that, once an offer was received on the home, he "communicated that to Mr. Barnes' next attorney." Barnes' attorney objected to these statements and the court either instructed the jury to disregard them or instructed the prosecutor to move on to his next question.

¶29 Other witnesses made comments that were not relevant. For example, one witness testified that Barnes stated he had a "tax guy [that] could alter numbers." The witness to whom Barnes made a statement about having a "surprise" for his ex-wife regarding the proceeds of the house testified that she thought Barnes was a "strong investigative lead" when she learned of the arson. When explaining how uncomfortable she was with her conversation with Barnes, she stated the conversation became "unusual" when he commented that "he had been trespassed from his daughter's school." Again, Barnes' attorney objected to these comments and the court either sustained the objection or advised the prosecutor to move to his next question.

¶30 In the final jury instructions, jurors were instructed regarding the evidence to be considered: "If the court sustained an objection to a lawyer's question, you must disregard it and any answer given. Any testimony stricken from the court record must not be considered." We presume that the jury followed the instructions. *State v. Newell*, 212 Ariz. 389, 403, ¶ 68 (2006). Barnes has presented nothing showing that the prosecutor intended to prejudice him. Moreover, he has not shown that, absent the prosecutor's actions and the subject witness testimony, he would have received different verdicts. Accordingly, this argument fails. Considering the record as a whole, and in particular the instructions given by the trial court, the testimony elicited does not rise to the level of prosecutorial misconduct, let alone constitute fundamental error.

IV. *Illegal Sentences*

¶31 Barnes claims the trial court erred in considering aggravating circumstances when it sentenced him, resulting in illegal sentences. The State filed an allegation of a 27-year-old conviction for sentencing purposes,

but the court did not consider the prior conviction as an aggravating circumstance. The court stated it only considered the emotional effect on Barnes' ex-wife as an aggravating circumstance. The court considered statements made by Barnes' family and his lack of prior violent felony convictions as mitigating factors. Ultimately, the court determined that "[a]s to count 1 . . . any factors that are aggravating and any factors that are mitigating do not outweigh each other. The Court finds that the presumed sentence, which is the presumptive sentence is appropriate."

¶32        A trial court has "discretion to consider various factors related to the offense and the offender when it imposes a sentence within the range of punishment prescribed by the statute." *State v. Tschilar*, 200 Ariz. 427, 432, ¶ 18 (App. 2001). The court sentenced Barnes to a presumptive sentence for count 1, arson of an occupied structure, and it did not sentence Barnes to any prison time for counts 5 or 6, attempt to commit fraudulent schemes and artifices, and presenting a false, incomplete, or misleading insurance claim, respectively. Barnes' sentences are within the permissible statutory ranges for the offenses of which he was convicted. *See State v. Myers*, 117 Ariz. 79, 90 (1977) ("Within statutory limitations, the sentence is left to the discretion of the trial judge.").

¶33        Barnes additionally argues that, because the court could not consider aggravating circumstances and he presented mitigating circumstances, he should be sentenced to mitigated sentences. A "trial court need only consider evidence offered in mitigation; it need not find the evidence mitigating." *State v. Long*, 207 Ariz. 140, 148, ¶ 41 (App. 2004). We have previously held that "even when only mitigating factors are found, the presumptive term remains the presumptive term unless the court, in its discretion, determines that the amount and nature of the mitigating circumstances justifies a lesser term." *State v. Olmstead*, 213 Ariz. 534, 535, ¶ 5 (App. 2006) (upholding a presumptive sentence where no aggravating factors were found). The trial court did not err when it sentenced Barnes.

        *V.        Review of the Record*

¶34        The record reflects Barnes received a fair trial. He was represented by counsel or advisory counsel at all stages of the proceedings against him and was present at all critical stages. The State presented both direct and circumstantial evidence sufficient to allow the jury to convict him. The jury was properly comprised of twelve members. The court properly instructed the jury on the elements of the charges, the State's burden of proof, and the necessity of a unanimous verdict. The jury returned a unanimous verdict, which was confirmed by juror polling. The

court received and considered a presentence report, addressed its contents during the sentencing hearing and imposed legal sentences for the crimes of which Barnes was convicted.

## CONCLUSION

**¶35**      We have reviewed the entire record for reversible error and find none. *See Leon*, 104 Ariz. at 300. Accordingly, we affirm Barnes' convictions and sentences.

**¶36**      After the filing of this decision, defense counsel's obligations pertaining to Barnes' representation in this appeal have ended. Counsel need do no more than inform Barnes of the status of the appeal and of his future options, unless counsel's review reveals an issue appropriate for petition for review to the Arizona Supreme Court. *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). Barnes has thirty days from the date of this decision to proceed, if he desires, with a *pro per* motion for reconsideration or petition for review.



AMY M. WOOD • Clerk of the Court
FILED: AA