Alvin Lee HAWKINS, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–87–047 CR.

Court of Appeals of Texas, Beaumont.

Dec. 31, 1987.

Discretionary Review Granted March 30, 1988.

Warren L. Clark, Beaumont, for appellant.

John R. DeWitt, Asst. Crim. Dist. Atty., and Tom Maness, Dist. Atty., Beaumont, for appellee.

### OPINION

DIES, Chief Justice.

A jury found Appellant guilty of burglary of a habitation, and found him to be an habitual offender. The jury assessed punishment at ninety-nine years confinement in the Texas Department of Corrections. Appeal has been perfected to this Court.

Appellant's first three points of error all challenge the constitutionality of the Instruction on Parole Law, *TEX.CODE CRIM.PROC.ANN. art. 37.07, sec. 4(a)-(d)* (Vernon Supp.1987). This Court has already ruled on these contentions in *Boudreaux v. State*, 723 S.W.2d 230 (Tex.App. —Beaumont 1986, no pet.) (Burgess, J. dissenting). These points of error are overruled.

Appellant's fourth and final point of error follows:

"The Trial Court committed reversible error in failing to suppress evidence seized from Appellant's person resulting from an illegal, warrantless arrest, all in violation of the United States and Texas Constitutions and Article 38.23 C.C.P."

Officer Soirez of the Beaumont Police Department was dispatched by radio to a residence on Detroit Street to a suspected burglary in progress. This was at 4:29 a.m. Just before he reached the residence, he saw the Appellant riding a bicycle and "zig-zagging" from one curb to the other. Officer Soirez turned on the lights on his vehicle. (Since he was dispatched to a crime in progress, he had been driving without lights.) He asked Appellant for identification; Appellant could give none. The officer detected a strong odor of alcohol on Appellant's breath. The officer noticed bulges in Appellant's pockets and proceeded to "pat" him down for weapons. Appellant told the officer he had jewelry on his person. The officer then called Officer Thompson who took the jewelry from Appellant to complainants, who identified it as being theirs, and Appellant was placed under arrest.

The seminal case of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), established the right of law officers to temporarily stop, "frisk" and "pat" down persons exhibiting to them unusual and suspicious conduct. The conduct of Terry and two other men was, if anything, less unusual than Appellant's conduct in the case we review; Terry and his two confederates were seen loitering, communicating with each other, and looking into the display window of a store, in broad day light. On being "frisked," weapons were obtained by the officers which the Court found admissible, holding the search to be a reasonable one under the Fourth Amendment. Chief Justice Burger, in writing for the majority, concluded:

"Each case of this sort will, of course, have to be decided on its own facts. We

merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or other's safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken."

392 U.S. at 30–31, 88 S.Ct. at 1884–85, 20 L.Ed.2d at 911.

■ Circumstances short of probable cause for arrest may justify temporary detention for the purposes of investigation which is considered to be a lesser intrusion upon the personal security of the individual than arrest. *Armstrong v. State,* 550 S.W. 2d 25 (Tex.Crim.App.1977); *Leighton v. State,* 544 S.W.2d 394 (Tex.Crim.App.1976); *Ablon v. State,* 537 S.W.2d 267 (Tex.Crim. App.1976).

■ The time of the morning, the smell on Appellant's breath, his zig-zagging from curb to curb, and the bulge in his pocket, all gave Officer Soirez articulable facts and reasonable ground to conduct the limited search he did. This point of error is overruled.

The dissent agrees that the initial stop and pat down of Appellant was authorized. But, in so doing, he offers a method without a solution. He discovered the presence of the jewelry under circumstances which would lead any reasonable officer to conclude it was taken by Appellant in the burglary. What was the officer then to do? Cross town, wake up a magistrate at 4:30 a.m.? And, in this interval, is it imaginable Appellant would remain stationary or the jewelry available for search? If the dissent be good law, why should the officer endanger his life by a pat down? *See Jackson v. State,* 738 S.W.2d 349 (Tex.App. —Beaumont 1987, no pet.).

The judgment of the trial court is affirmed.

Affirmed.

## DISSENTING OPINION

BURGESS, Justice.

I respectfully dissent. I agree with the majority when they hold that the initial stop of appellant was authorized and that the pat down of appellant was appropriate. I disagree, however, that the seizure of the jewelry by Officer Thompson was reasonable. There is nothing in the record, nor does the state contend, that appellant consented to the seizure of the jewelry. Furthermore, there is nothing in the record to show that Officer Thompson had probable cause to effect such a seizure. It is true that Officer Thompson had been informed that some jewelry had been taken, but he had no specific description or any mention of specific items. The fourth amendment protects not only from unreasonable searches, but unreasonable seizures also. When Officer Thompson seized the jewelry, he did so based only upon suspicion and not probable cause. Therefore, the jewelry should have been suppressed. The case should be reversed and remanded on this issue.

I also dissent on the issue of the parole instruction. While I have continued to maintain that the instruction was unconstitutional, it has only been since *Rose v. State,* No. 193–87 (Tex.Crim.App. November 12, 1987) (not yet reported), that a majority of our court of criminal appeals has agreed with me. I would hold that the instruction violates the "due course of law" provision because it is a misstatement of the law and it is internally contradictory and confusing. Therefore, I believe its mere use requires a reversal. However, a plurality of the court of criminal appeals requires an *Almanza* analysis. Under

such an analysis, I still find reversible error. The original charge on punishment was given to the jury *without* a parole instruction. A short time thereafter, the jury sent a note inquiring about the difference between a ninety-nine year sentence and a life sentence. A very short time after that they sent out another note inquiring about the possibility of parole with a life sentence. It was after this that the trial court gave the parole law instruction over appellant's proper objection. The jury then returned the ninety-nine year sentence. It is a reasonable inference that the jury returned the ninety-nine year sentence over the life sentence because of the formula expressed in the instruction. This is some harm, although admittedly perhaps no practical harm because of the manner in which parole is actually administered. I would therefore reverse and remand on the parole law instruction. Because the majority fails to do so, I respectfully dissent.