**Alvin Lee HAWKINS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–87–047–CR.**

Court of Appeals of Texas, Beaumont.

Feb. 15, 1989.

Discretionary Review Refused May 10, 1989.

Warren L. Clark, Amarillo, for appellant.

John R. DeWitt, Tom Maness, Beaumont, for appellee.

### OPINION ON REHEARING AFTER REMAND

DIES, Chief Justice.

The opinion issued on this cause on January 18, 1989, is hereby withdrawn and the following opinion is substituted. We grant the State's motion for rehearing as to ground number two of that motion only. Appellant's motion for rehearing is overruled.

This is an appeal from a conviction for the offense of burglary of a habitation. After finding Appellant guilty and finding that Appellant was an habitual offender, the jury assessed punishment at ninety-nine years confinement. In his brief be-

fore this court, Appellant argued that the trial court erred in instructing the jury on the law concerning good time and parole, because the charge is predicated upon an unconstitutional statute. This court rejected Appellant's challenge to the constitutionality of *TEX. CODE CRIM.PROC.ANN. art. 37.07, sec. 4* (Vernon Supp.1989). *Hawkins v. State,* 744 S.W.2d 641 (Tex. App.—Beaumont 1987).

The Court of Criminal Appeals subsequently held that *Article 37.07, sec. 4* is unconstitutional. *Rose v. State,* 752 S.W. 2d 529 (Tex.Crim.App.1988). Upon Appellant's petition for discretionary review, the Court of Criminal Appeals, 761 S.W.2d 23, reversed this court's decision and remanded the case to this court for a determination of whether the error was harmless under the guidelines of *TEX.R.APP.P. 81(b)(2).*

*TEX.R.APP.P. 81(b)(2)* provides:

"If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment."

In *Rose,* the Court of Criminal Appeals found three factors which indicated that the appellant was not harmed by the submission of the parole law instruction. These were (1) the inclusion of an instruction that the operation of the parole laws was not the concern of the jury, (2) the aggravating facts surrounding the offense; and (3) the prior criminal record of the defendant.

In the present case, the trial court did not submit the curative instruction that the operation of the parole laws was not the concern of the jury. However, the jury found that Appellant had been twice previously convicted of burglary. There was substantial evidence that Appellant had also been previously convicted of a third burglary. The testimony and exhibits introduced by the State also indicate that Appellant committed the present burglary

in a particularly outrageous and offensive manner. For instance, there was evidence that the victims' pet bird had been decapitated. The record also shows that the burglar had defecated and urinated in one of the bedrooms, then cleaned himself on clothes taken from the victims' closet. Furthermore, one of the investigating officers testified that he had investigated thirty burglaries and had never seen a house in worse condition than in the present case.

We are certain that the heinous manner in which the offense was committed and Appellant's prior convictions for the same offense contributed significantly to the severity of the sentence meted out by the jury. However, the peculiar circumstances which led the trial court to submit the *Article 37.07, sec. 4* instruction in this case indicate a reasonable possibility that the jury may have considered the existence and effect of the parole laws in reaching their verdict on punishment.

The trial court did not include the *Article 37.07, sec. 4* instruction in the original charge to the jury on punishment. The jury began its deliberations on punishment at 11:08 a.m., after receiving the trial court's original charge. The record reflects that at 11:43 a.m. the trial court had just received a note from the jury. The note reads as follows: "Any possibility of parole with a life sentence." The note was signed by the foreman of the jury. The trial court then submitted the statutorily mandated charge concerning good time credit and parole to the jury, because it was mandated and because the jury had made specific inquiry in that regard.

The transcript contains another note from the jury, which reads as follows: "What is the difference between a 99 year sentence or a life sentence?" The trial court responded in writing that he was legally prohibited from answering the question and that all the law he was legally permitted to furnish was contained in the charge "you have been given." Both the Appellant and the State agree that this note was sent to the trial court before the note asking whether there was any possibility of parole with a life sentence. Find-

ing nothing in the record to indicate the order in which the notes were sent to the trial judge, we will accept the version of events as represented in the briefs of both parties. *TEX.R.APP.P. 74(f)*.

The State argues that the first note, which asked the difference between a life sentence and a ninety-nine year sentence, shows that the jury very quickly decided that one or the other of such sentences was appropriate for Appellant in this case. Since this note was written before the parole law instruction was given, the State argues the discussion of parole laws could not have been precipitated by the instruction. Characterizing the ninety-nine year sentence as less harsh than a life sentence, the State concludes that the record reveals that no harm resulted from the giving of the instruction.

Such argument rests upon the assumption that the entire jury had narrowed its deliberations to the options of a life sentence, or ninety-nine years, prior to the giving of the parole law instruction. The fact that the two notes were sent to the trial judge does not, however, justify such conclusion. Nothing in the record indicates how many jurors, if any, had decided to so limit their punishment deliberations prior to receiving the parole and good time credit instruction.

We do, however, find that the notes the jury sent to the trial judge raise a reasonable likelihood that the jury used the erroneous instruction to help determine the sentence to be assessed. Certainly, we cannot find that the erroneous instruction made no contribution to the sentence imposed by this jury. While we do not hold that the giving of the curative instruction cited in *Rose, supra,* is essential in every case, we believe the lack of such an instruction in this case is a particularly important factor in the determination of whether the error was harmless beyond a reasonable doubt. Absent such curative instruction, we cannot find beyond a reasonable doubt that submission of the parole law instruction made no contribution to the verdict of ninety-nine years when the minimum punishment under the law was twenty-five years confinement upon the jury's finding the

enhancement allegations to be true. *TEX. PENAL CODE ANN. sec. 12.42(d)* (Vernon Supp.1989).

The judgment of the trial court is reversed and the cause is remanded for a new trial on the issue of punishment only. *See TEX.CODE CRIM.PROC.ANN. art. 44.29(b)* (Vernon Supp.1989).

Reversed and Remanded.

BROOKSHIRE, Justice, dissenting.

With respect this dissent is filed. In *Rose v. State*, 752 S.W.2d 529 (Tex.Crim. App.1988), and especially in what has been referred to as *Rose II*, the Court of Criminal Appeals found three elements which would strongly demonstrate that the Appellant was not harmed to any degree even though the parole law instruction had been given to the jury. Two of these elements or factors were: (1) the aggravating and heinous facts of the principal offense on trial and on appeal; and (2), the prior criminal record of the accused. In *Hawkins*, it is clear that this Appellant had been at least twice previously convicted of burglary. Indeed, the Court's opinion recognizes that there was substantial evidence that Hawkins had been previously convicted of a third burglary. Hawkins certainly had a long standing, repetitious, prior criminal record of convictions.

The Court also recognizes that the instant burglary on appeal was committed in a particularly outrageous and offensive manner. A pet bird or pet canary of the householder had been decapitated. The burglar had committed useless and repulsive acts in one of the bedrooms and, instead of using the customary toilet paper, he had used clothes taken from the victim's closet. Generally speaking, the house was thoroughly trashed and the details of the offense lead an investigating officer to swear that he had never seen a house in worse condition, although he had investigated some thirty other burglaries. Thus, two of the factors or elements in *Rose II* are glaringly present and proved in the case before us.

I think it is significant and interesting— and, indeed, determinative—to realize the manner and the reasons in this case for the giving of the parole law instruction. The parole law instruction was not given in the court's charge at the punishment phase of the trial. Hence, the jury had no instructions or information from the trial court touching upon or relevant to parole when the jury commenced its deliberations on punishment.

However, during the jury's initial deliberations on punishment, several important and crucial written communications arose. The jury sent a written communication to the trial judge reading:

"What is the difference between a 99 year sentence or a life sentence?"

To this question, the able district judge replied:

"Members of the jury: I regret that I am legally prohibited from answering the question you have asked.

"All of the law I am legally permitted to furnish is contained in the charge you have been given."

Signed: "Larry Gist, Judge"

But this reply did not satisfy the jury. The next written communication from the jury to the trial judge was:

"Any possibility of parole with the life sentence [?]" It was glaringly clear to the district court that the jury was actually considering and probably discussing, at some length, the matter of parole. These two communications from the jury to the judge, and especially the wording thereof, caused the trial judge to give an instruction on good time credit and parole. It is also significant that the trial court, in his chambers and out of the presence of the jury, read into the record that since the Appellant had objected to the first draft of the court's charge at the punishment stage (which charge contained the inclusion of the parole law instruction) then at the Appellant's request and following his objection; the parole law instruction was removed.

Then the court narrated, among other matters, that since the jury had made a specific inquiry, the court then directed that the instruction on good time credit and

parole be furnished to the jury in writing. This was done, evidently, to enable the jury to reach a verdict and to give the jury some correct information on parole. It was clearly obvious from the jury's written communications to the court that the jury was considering and discussing parole. The jury specifically asked if there was any possibility of parole for this Appellant if he received a life sentence; at that time the jury evidently had narrowed the alternatives of punishment to either life or 99 years. No error occurred in giving the parole instruction. The trial judge was clearly acting as a judicial officer. He was not acting solely pursuant to the mandatory direction of the legislature. Hence, under this unique record, the doctrine of separation of powers was not violated by the trial judge.

Logically, then, the instruction given was, in significant part, a judicial function. Decisional precedent has demonstrated that it is the statutory, legislative, mandatory parole instruction that violates the separation of powers doctrine and *Rose II, supra,* is applicable to the appellate review. This review is governed by *TEX.R.APP.P. 81(b)(2).*

But other decisional precedents have established that other types of instructions (such as here being judicial instructions) are to be analyzed under the standards set forth in *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1985). Judge Gist properly and primarily gave the instruction to the jury in order that it might have some correct information on the questions troubling the jury.

Furthermore, Judge Gist carefully followed *TEX.CODE CRIM.PROC.ANN. art. 36.27* (Vernon 1981). The said *Article 36.-27* specifically provides that any communication from the jury to the judge shall be in writing and prepared by the foreman and shall be submitted to the court. Then the court "shall answer any such communication in writing, and before giving such answer to the jury shall use reasonable diligence to secure the presence of the defendant and his counsel, and shall first submit the question and also submit his answer to

the same to the defendant or his counsel" for the purposes of making objections and exceptions. *Article 36.27* was assiduously followed by the experienced trial judge. *Article 36.27* invests in the trial court reasonable discretion since it provides that the trial judge "shall proceed to answer the communications as he deems proper".

Pursuant to this unique record, I would vote to affirm the judgment, sentence and punishment assessed below.